COLUMBIA GAS & ELECTRIC CO. v. KNICKERBOCKER TRUST CO.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES.
   The court in construing a contract must ascertain the intention of the parties, and give effect thereto, if possible.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. CORPORATIONS (§ 486*)—MORTGAGES—CONSTRUCTION—SINKING FUND.
   A stipulation in a mortgage to secure corporate bonds that, to provide a sinking fund for the redemption of the bonds, the corporation would pay to the trustee January 1st in each year percentages "of the entire amounts of bonds which shall have been issued and outstanding" on said dates for the purchase or construction and acquisition of enumerated properties, and that the sinking fund may, at the election of the corporation, be left with the trustee at interest, or used to redeem bonds secured, or invested in other securities, requires the corporation to pay the annual percentages estimated on the whole amount of bonds issued, including bonds purchased by the trustee with percentages previously paid, but not including any bonds issued for the purpose which have been canceled with moneys not derived from the percentages previously paid.
   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 486.*]

   Dowling, J., dissenting.

Submission of controversy under Code Civ. Proc. §§ 1279–1281, between the Columbia Gas & Electric Company and the Knickerbocker Trust Company, as trustee. Judgment for defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Henry W. Taft, of New York City, for plaintiff.
Julien T. Davies, of New York City, for defendant.

SCOTT, J. The controversy relates to the proper construction and effect to be given to a sinking fund provision contained in a mortgage executed by plaintiff to defendant as trustee.

On or about February 23, 1907, the plaintiff duly executed and delivered to defendant, as trustee, a certain mortgage to secure an issue of bonds aggregating $25,000,000, each of said bonds to be dated January 1, 1907, and payable, unless sooner redeemed, on January 1, 1927. As to certain of the bonds so to be issued, a sinking fund

provision was inserted in the mortgage, which has given rise to the controversy. It reads as follows:

### "Article III.

"Section 1. For the purpose of providing a sinking fund for the redemption of the bonds issued hereunder, the grantor agrees that it will pay to the trustee on the first day of January in each year, beginning with the year 1910, an amount which shall equal, in the following years, the following percentages of the entire amounts of bonds which shall have been issued and outstanding on said dates for the purpose of the purchase or construction and acquisition of gas wells, gas fields, pipe lines, pumping stations, natural gas properties and accessories thereto, to wit: 1910 –4%; 1911 –4%; 1912 –4%; 1913 –5%; 1914 –5%; 1915 –5%; 1916 –5%; 1917 –6%; 1918 –6%; 1919 –6%; 1920 –6%; 1921 –7%; 1922 –7%; 1923 –7%; 1924 –7%; 1925 –8%; 1926 –8%. Provided, always, that, as respects bonds issued for the purposes in this section mentioned subsequent to January 1st, 1910, such additional sinking fund shall be created each year as will redeem all of such bonds so issued subsequent to January 1st, 1910, on or before January 1st, 1927.

"Said sinking fund may, at the election of the grantor, be (a) left with the trustee at interest; (b) used for the redemption of bonds of the issue secured by this indenture; (c) invested in other securities approved by the trustee.

"In the event the grantor elects to invest said sinking fund moneys in bonds issued hereunder, it shall, in writing, so notify the trustee, and the trustee shall give notice that proposals for the acquisition of bonds hereunder for redemption through the sinking fund will be received at its office in the city of New York at a date to be fixed in said notice, which notice shall be published at least once a week for four successive weeks in a daily newspaper published in the city of New York and also in a daily newspaper published in the cities of Cleveland and Cincinnati, Ohio. The lowest of all such offers shall be accepted by the trustee in their order until said sinking fund is exhausted, but no purchase by the sinking fund shall be made by the trustee at a price greater than par and accrued interest. In the event that sufficient offers are not received to exhaust the amount deposited in the sinking fund, then a sufficient number of bonds shall be drawn by lot by the trustee to exhaust said sinking fund. In the event any registered bond or bonds are drawn for redemption, the holder of such registered bond or bonds shall be notified by letter to present his registered bond or bonds for redemption.

"Notice by like publication as above provided shall be given to the holders of unregistered bonds so drawn.

"All sinking fund moneys on hand at the maturity of the bonds issued hereunder shall be applied to the payment thereof at par and accrued interest."

There were issued by the plaintiff under the mortgage bonds to the amount of $17,413,500, of which only $2,841,500 were issued for the purchase or construction and acquisition of gas wells, gas fields, pipe lines, pumping stations, natural gas properties, and accessories thereto. Consequently only this amount of bonds were to be provided for by the special sinking fund provision quoted above. The remaining bonds were issued for other purposes. At various times between January 1, 1911, and January 1, 1912, there were purchased, redeemed, and canceled, in accordance with the provisions of the mortgage, bonds to the amount of $3,693,000, of which bonds to the amount of $1,660,000 were bonds issued for the special purposes hereinbefore enumerated, and consequently bonds intended to be provided for by the special sinking fund created under the provisions of section 1 of article 3 of the mortgage, quoted above. Of the moneys used to pur-

chase and retire the bonds above mentioned the sum of $227,300, and no more, was provided by the percentage specified to be paid under said section 1 of article 3, the remainder of the moneys being derived from the proceeds of the sale of property released from the lien of the mortgage, and not comprising any of the classes of property mentioned in said section 1 of article 3.

The situation presented therefore is as follows: The total issue of bonds for the purposes mentioned in section 1 of article 3 of the mortgage and intended to be secured by the sinking fund provided for by that section is $2,841,500. Of these bonds $1,660,000 have been purchased, redeemed, and canceled, to the purchase of which the sinking fund created by said section 1 has contributed $227,320; the moneys to purchase and redeem the remaining $1,422,680 having been derived from other sources.

The question presented for solution is upon what sum shall the percentages to be paid in the future be calculated. The plaintiff's contention is that it is required to pay to the trustee only the specified percentage upon the bonds which may in any year be outstanding and unredeemed, while the defendant contends that the percentage should continue to be paid during the whole term of the bonds upon the amount issued, and which shall have been at any time outstanding, making no deduction or allowance for bonds which may have been redeemed and canceled. Both parties refer to and rely upon the language used in section 1 of article 3, to the effect that the amount to be paid in each year shall be a percentage "of the entire amount of bonds which shall have been issued and outstanding on said dates." The reading given to this phrase by the respective parties differs widely. The plaintiff reads it as if it were written a percentage in each year "of the entire amounts of bonds which shall have been issued and are then outstanding." The defendant's reading is that the percentage to be paid in each year shall be "of the entire amounts of bonds which shall have been issued and shall have been outstanding on said dates."

[1] In attempting to construe the disputed phrase, it is our duty to ascertain what it was that the parties intended to effect by the provisions of the mortgage in which the phrase appears, and having ascertained that to give to the disputed phrase, if possible, such a construction as will carry out the intention of the parties.

[2] Unquestionably what the parties had in mind was to create a special sinking fund to secure the payment and retirement of the bonds issued for the particular classes of property described in section 1 of article 3, and they undoubtedly intended that the sinking fund so provided should be sufficient to pay and retire all such bonds at their maturity, for the percentages required to be paid in each year, when added up will be found to aggregate 100 per cent., and as to any such bonds issued after January 1, 1910, it is specifically provided that an additional sinking fund shall be created each year which will be sufficient to redeem all of such bonds on or before their maturity on January 1, 1927. The specified percentages will, however, be sufficient to pay off the whole issue at maturity only if they con-

tinue to be estimated upon the whole amount issued, and payable out of such sinking fund. Under the construction contended for by plaintiff, there would not be enough to pay all the bonds, if the trustee used the annual payments to purchase and redeem bonds of this particular character. For instance, if the whole issue of bonds to be provided for by this special sinking fund aggregated $1,000,000, and in the year 1910 the plaintiff paid to the trustee 4 per cent. which the trustee used to purchase and redeem $40,000 of the bonds, there would be left only $960,000 outstanding. The contention of the plaintiff is that the 4 per cent. to be paid in the following year should be calculated only on this latter sum, and so on, the amount on which the percentage is to be calculated being reduced each year by the amount paid on account of the sinking fund in the preceding year. A calculation will show that, if this construction be adopted, the sinking fund thus created will be sufficient to pay only about two-thirds of the bonds issued. This certainly is not the result which the parties intended to achieve. On the other hand, if the construction contended for by the defendant is adopted, and the percentages are calculated upon the total amount of bonds issued, and no bonds are purchased and retired except from the designated percentages, the amount contributed by the sinking fund will exactly meet and pay the total issue of bonds at maturity. It appears to be reasonable to assume that this is the result sought to be accomplished. The trustee was not obliged to use the percentages as received for the purchase and retirement of the particular bonds secured by this special sinking fund. Those percentages might, at the option of the mortgagor, be used for that purpose, or be left with the trustee at interest, or be invested in other securities approved by the trustee. If either of the two latter causes was adopted, all of the bonds originally issued would remain outstanding, and the percentages would be calculated on the whole amount. If the bonds paid out of the sinking fund contribution are to be excluded in the subsequent calculation of the percentages, not only will the sinking fund fail to accomplish its desired purpose, but the determination whether or not it shall fully provide for the bonds will be left to the party who is obligated to make the payments. In our opinion the proper construction of the disputed phrase, and the only one which will fully carry out the intention of the parties when the mortgage was executed, is to hold that the stipulated annual percentages should be calculated upon the whole issue of bonds intended to be secured thereby, including such as may have been purchased and retired by the trustee with the percentages already paid to it. This amounts to treating the bonds so purchased and retired as still "outstanding" as between the plaintiff and the trustee. In other words, for the purpose of the sinking fund, the bonds purchased should be treated as investments by the trustee of the accumulated and paid percentages. In fact, section 1 of article 3 expressly refers to the act of the trustee in purchasing such bonds as an investment. For any other purpose than for determining the sum upon which the percentage is to be calculated the bonds so purchased are to be redeemed. This construction gains some support from the circumstances that it is not

provided as to bonds purchased by the trustee with the sinking fund payments that they shall be "canceled," but only that they shall be "redeemed." If no bonds intended to be secured by this special sinking fund should be purchased except from the proceeds of the sinking fund, we consider that the stipulated percentages must be calculated upon the whole issue, including such as might have been purchased for redemption by the trustee out of the moneys of the sinking fund, since in our opinion in this way only could the real intent of the parties be carried out, and since the language of the mortgage is not inconsistent with such a construction.

The question is now complicated, however, by the fact apparently not taken into account as a probability when the mortgage was made, and certainly not specifically provided for in section 1 of article 3 that bonds to the amount of $1,422,680 of the class of bonds designed to be secured by this special sinking fund have been purchased, redeemed, and canceled, the funds for the purchase having been provided from sources other than the sinking fund payments provided for in article 3, and the question presents itself whether the annual percentages to be paid hereafter must be calculated upon this sum, as well as upon the amount of bonds not redeemed and those purchased by the trustee with percentages already paid. We think not. To hold that the percentages should be so calculated would be as far from the obvious intention of section 1 of article 3 as would the construction contended for by the plaintiff, for it would result in the accumulation at the maturity of the bonds of a very large surplus much more than will be necessary to pay all the bonds and as to the disposition of which surplus no provision is made.

Our conclusion is that the true intent and meaning of section 1 of article 3 is that the estimated annual percentages are to be paid upon the whole amount of bonds issued for the particular purpose mentioned in that article, including all of such bonds as may have been purchased by the trustee with percentages already paid, which, for the purpose alone of calculating the sinking fund payments, are to be deemed outstanding, but not including any bonds issued for that purpose which may have been purchased, redeemed, and canceled with moneys not derived from the payment of percentages specified in said section. The practical application of this rule, upon the figures embraced in the agreed case, will require the plaintiff to presently pay as the amount due in January, 1912, 4 per cent. upon $1,408,820. Under this construction, the obvious intent of the parties to the mortgage will be exactly carried out. The percentages will be sufficient to wholly pay the entire issue of bonds to which they are made applicable, or so many thereof as may not be purchased and canceled from other sources, and the plaintiff will not be obliged to bear the burden of accumulating in the hands of the trustee an unnecessarily and unreasonably large sum of money.

The question propounded by the submission will therefore be answered in accordance with the foregoing opinion, and a judgment to that effect entered without costs to either party.

INGRAHAM, P. J., and McLAUGHLIN and MILLER, JJ., concur.

DOWLING, J. (dissenting).  As we are concerned solely with the interpretation to be placed upon the provisions for a sinking fund contained in the mortgage itself and cannot construct a new one for them, I am unable to agree with the conclusions reached by the court herein.  The sinking fund could be applied, at the election of the plaintiff, in any one of three ways:  (1) By leaving it with the trustee at interest;  (2) by using it for the redemption of bonds;  (3) by investing it in other securities approved by the trustee including an investment in bonds issued under the mortgage.

The first and third methods would have produced a sum sufficient to pay off the bonds in full at maturity.  The second demonstrably would not, if the redemption were made as soon as payments from the fund occurred.  But that is a defect in the plan with which we are not concerned.  It seems evident to me that the contingency of an inadequate fund was foreseen, for there is a provision that "all sinking fund moneys on hand at the maturity of the bonds issued hereunder shall be applied to the payment thereof at par and accrued interest."

But what was done when the amount of bonds in question of the issue for gas purposes was redeemed was not to invest the sinking fund therein, but to absolutely pay off the bonds, for the agreed statement of facts sets forth that the bonds in question were "purchased, redeemed and canceled," which leads, it seems to me, to the irresistible conclusion that the bonds were no longer outstanding.  A canceled bond ceased to be an obligation of the corporation, and is as naught.  Therefore, on January 1, 1912, deducting these canceled bonds, there were outstanding bonds to the amount of $1,181,500.  Under the provisions of article 3, § 1, the plaintiff was to pay to the trustee on January 1, 1912, an amount equal to 4 per cent. upon the entire amount of bonds which should have been issued and outstanding on that date.  While more had been issued, as the result of cancellations, the description in the conjunctive was answered by only the amount of $1,181,500 in bonds, for that was the total sum then outstanding, and upon that the percentage should be computed.

I believe that judgment should follow so determining, without costs.