## Sands and wife *against* Lyon.

In order to constitute a legal tender of a debt or pecuniary claim, it is necessary, as a general rule, that the money be actually produced and placed within the power of the creditor or claimant to receive it.

But when such production is prevented, by the party entitled to it, or is expressly waived by him, or he does that which is equivalent, it is not necessary.

Therefore, where a sum of money being due from *A* to *B*, *A* took the money, and was proceeding in a wagon to the residence of *B*, to tender it to him, when he met *B* on foot ; *A* stopped his wagon, and said to *B*—"I have got the money here to pay you"—specifying the claim—and put his hand into his pocket to take out the bag which contained the money ; while he was doing this, *B* said, "I want nothing to do with such cut-throats as you"— and walked rapidly by and away from *A ;* and the jury found, that *A* was thereby prevented from producing the money and offering it to *B;* it was held, that this was a good tender.

Where a testator devised land to his son *B*, on condition that he should pay to *A* 100 dollars within one year next after the testator's decease ; the testator died on the 2nd day of *October* 1841 ; the 2nd day of *October* 1842, was *Sunday ;* and *B* tendered the money to *A*, on *Monday*, the 3rd of *October* 1842 ; it was held, 1. that in the computation of the year within which the money was to be paid, the day of the death of the testator should be excluded ; and

2. that the expiration of the year, according to that mode of computation, occurring on *Sunday*, the tender made on the following day, was made in sufficient season.

There is no invariable sense, however, to be attached to the word " after," when used in such a connexion; but it is to be taken to be exclusive or inclusive, according as it will, in the particular case, effectuate the intention of the parties; and in ascertaining that intention, the context and the subject matter are to be regarded, as well as the effect of the construction to uphold or destroy the instrument in question, and the rights depending upon it; the presumption being, that instruments are designed to be effectual, and not futile. In cases of doubt, the construction is to be such as will save the right or estate; such being the presumed intention.

*Fairfield,*
June, 1846.

Sands
*v.*
Lyon.

This was an action of ejectment, to recover of the defendant the seisin and possession of one undivided seventh part of certain lands described in the declaration.

The cause was tried at *Danbury, October* term 1845, before *Storrs*, J.

*Joshua Lyon*, at the time of his death, was the owner in fee simple of the estate described in the declaration. He made his last will and testament, on the 11th of *July* 1837 ; and died, on the night following the 1st day of *October* 1841, leaving seven children and heirs at law, one of whom is *Phebe Sands*, one of the plaintiffs, and another is *John Lyon*, the defendant.

The plaintiffs claimed to recover the demanded premises, in the right of said *Phebe*, as such heir at law.

The defendant claimed, that said *Joshua* devised the premises to him, by his said last will and testament; which had been duly proved and approved by the court of probate to which the settlement of his estate by law appertained. The testator, after giving to his daughter *Hannah Knapp*, the privilege of residing, during her life, in his dwelling-house, and of taking fire-wood enough from the land devised to his son *John*, to supply one fire, devised as follows: " I give and bequeath to my said son *John*, all my real estate not hereinbefore bequeathed, subject to the said privilege of said *Hannah*, on condition that he do pay, in one year next after my decease, to each of my daughters, *viz. Hannah Knapp, Betsey Mosier* and *Phebe Sands*, one hundred dollars, and to the children of my deceased daughter *Sarah Lyon*, one hundred dollars." The land thus devised, embraced the land in ques-

tion; which the defendant has been in possession of, ever since the death of his father.

The plaintiffs claimed, that the testator died at the hour of 11 o'clock *P. M.*, on the 1st day of *October* 1841. The defendant, on the other hand, claimed, that he died at half past 2, in the morning of the 2nd day of *October* 1841. He also claimed, that the 2nd day of *October* 1842 happened on *Sunday ;* (which was not denied ;) and that on *Monday*, the 3d of *October* 1842, he tendered to the plaintiffs the sum of 100 dollars, in performance of the condition mentioned in said will, on which the estate had been so devised to him, the defendant ; and that the plaintiffs thereupon refused to receive said sum. The defendant also claimed, and it was not denied, that on the same 3d day of *October* 1842, he tendered to the other persons respectively, to whom by said will he was to pay money as therein mentioned, the sums so to be paid to them respectively ; and that they severally refused to receive the same ; and no question was made, but that the defendant had done all that was incumbent upon him, in order to constitute a legal and sufficient tender, in relation to all the persons to whom the sums mentioned in the will were to be paid, except as to the plaintiffs. The defendant thereupon prayed the court to charge the jury, that if they should find, that the testator died on the 2nd day of *October* 1841, and that the defendant tendered the sum of 100 dollars to the plaintiffs, on the 3d day of *October* 1842, which they refused to accept, such tender would be a sufficient performance of such condition, on the ground that the day of the death of the testator ought to be execluded from the computation in ascertaining the period of one year mentioned in the will ; and therefore, the term of one year would not be completed until the 2nd day of *October* 1842 inclusive ; and as this day happened on *Sunday*, when the tender could not be lawfully made, the time for the performance of the condition would be extended until the *Monday* following.

The plaintiffs denied that any tender of the sum of 100 dollars was made to them, or either of them, on the 3rd of *October* 1842, or at any time previous. They claimed also, that in making the computation of one year, the day on which the testator died, ought to be included in such computation, as part of the year ; and that, if he died on the 1st of *October*

1841, the tender, in order to constitute a performance of the condition by the defendant, should have been made on the 30th day of *September*, 1842 : that if the testator did not die on the 1st, but on the 2nd day of *October* 1841, as the defendant claimed, then the tender should have been made on the 1st day of *October* 1842 : that if he died on the 2nd of *October* 1841, and if, in the opinion of the court, the day on which he died, ought to be excluded in making the computation, still a tenaer on the 3d day of *October* 1842, was not a sufficient performance of the condition ; because, if the 2nd day of that month happened on a *Sunday*, the tender ought to have been made at least as early as the *Saturday* preceding such tender : and the plaintiffs prayed the court so to charge the jury.

*Fairfield,*
June, 1846.

Sands
*v.*
Lyon.

The defendant, in support of his claim that he tendered the sum of 100 dollars to the plaintiffs, on the 3d of *October* 1842, offered evidence to prove, and claimed to have proved, that on that day, having provided legal specie to a greater amount than 100 dollars, for the purpose of making such tender, he was proceeding to the residence of the plaintiffs to make such tender ; that on his way thither, he met *David Sands*, one of the plaintiffs, going in a contrary direction on foot ; that on meeting him, the defendant stopped the wagon in which he was riding, and said to *Sands*—" I have got the money here to pay you the legacy my father, *Joshua Lyon*, left your wife in his will ;" and immediately put his hands into his pocket to take therefrom the bag which contained the money, for the purpose of tendering it to *Sands ;* and that while he was so doing, *Sands*, who was at that time walking rapidly, said to him,—" I want nothing to do with such cut-throats as you"— and without stopping or slackening his pace, walked by and away from the defendant ; that the defendant, immediately afterwards, on the same day, proceeded to the residence of *Sands*, and there tendered to his wife, *Phebe Sands*, the sum of 100 dollars in payment of said legacy, which she then and there utterly refused to receive. The defendant, at the time of his interview with *Sands*, had in his pocket more than 100 dollars ; but it did not appear, that he took it out of his pocket and showed it to *Sands*, or offered it to him otherwise than as above stated.

The plaintiffs claimed, that on these facts, the money had

not been lawfully tendered to *Sands*, on the 3d day of *October* 1842, because it was not shown or offered to him ; and that the tender to his wife was not good or available to the defendant ; and the plaintiffs prayed the court so to charge the jury.

The court charged the jury, that in addition to the entry of the plaintiffs on the demanded premises, it was necessary for them, in order to recover, to prove an *ouster* by the defendant ; but that if, on demand being made of the defendant, by the plaintiffs, of said undivided share, the defendant refused to comply with such demand, or admit the plaintiffs to possession of said share, and remained in possession of the whole of the premises, denying any right of the plaintiffs therein, it was sufficient evidence of such ouster.

With respect to the time when the 100 dollars ought to be paid or tendered by the defendant, in order to fulfill the condition of the will, the court charged the jury, that if the testator died on the 1st day of *October* 1841, the tender offered to be proved by the defendant, on the 3d day of *October* 1842, would not be a sufficient performance of the condition ; but if they should find, that he died on the 2nd day of *October* 1841, a tender of the sum of 100 dollars, by the defendant, to *David Sands*, and a refusal by him to receive it, on the 3d day of *October* 1842, the 2d day being *Sunday*, would be a sufficient performance of the condition ; but that the tender must be proved to have been made to *David Sands*, and that a tender to his wife was of no avail.

As to what constitutes a lawful tender, the court charged the jury, that if they should find the facts true as claimed by the defendant, and that when he met *David Sands*, he was prevented, by his conduct, from actually producing and offering the sum of 100 dollars to him, it would, in law, be a sufficient tender of that sum to him, or be equivalent thereto, and have the same effect as if the money had been actually produced by the defendant, and by him shown and offered to *David Sands*.

The jury returned a verdict for the defendant ; and the plaintiffs thereupon moved for a new trial for a misdirection.

*Bissell* and *Booth*, in support of the motion, after remarking, that the devise to the defendant was on condition, and it was

incumbent on him to show a strict performance of the condition, before the heirs could be divested of their shares of the estate, contended, 1. That the transaction on the highway, on the 3d of *October* 1842, if in time, was not a sufficient tender of the money. The rule is, that there must be an actual production of the money, and an offer to pay it, unless there is an express refusal to receive it, or a formal tender is dispensed with, by an express declaration, or an equivalent act. In the first place, the money was not actually *offered* to *Sands ;* nor was it even put in his power to receive it. The language and conduct of the defendant import only, that he *had* the money and was *ready* to pay it. Secondly, *Sands* did not in any way dispense with a tender. That he expressly refused to receive the money, will not be claimed. Did he say or do what was equivalent to such refusal ; or did he, by his conduct, dispense with a tender ? *Sands'* calling the defendant " a cutthroat," and saying that " he wanted to have nothing to do with him," was not equivalent to saying, that he would not receive the money, if tendered ; or that the defendant might save himself the trouble of taking out the money. *Sands* might still be glad to get hold of it. That he walked along quickly, proves nothing. He might have had urgent business, and why should he stop or move slowly ? He had not heard the chink, or seen the glitter, of specie ; nor had he been requested to stop. 3 *Stark. Ev.* 1390. 1393. *Thomas* v. *Evans,* 10 *East* 101. *Dunham* v. *Jackson,* 6 *Wend.* 22. 33, 4. *Bakeman* v. *Pooler,* 15 *Wend.* 637.

2. That the tender, if properly made, was made too late. In the first place, in computing the period within which payment was required to be made, *viz.* in one year next after the decease of the testator, the day of his death ought to be *included* in the computation, and the year expired on the 1st of *October* 1842. 3 *Stark. Ev.* 1399. 1400. 1 *Sw. Dig.* 228, 9. 1 *Bla. Com.* 464. *Norris* v. *Hundred of Gawtry, Hob.* 139. *Castle* v. *Burditt* & al. 3 *Term R.* 623. *Rex* v. *Adderly, Doug.* 463. *Glassington* v. *Rawlins,* 3 *East* 407. *Kraus* v. *Arnold,* 7 *J. B. Moore* 59. (17 *E. C. L.* 70.) *Dickinson* v. *Shee,* 4 *Esp. R.* 68. *Leatherdale* v. *Sweepstone,* 3 *Car. & Pa.* 342. (14 *E. C. L.* 338.) *Presbrey* v. *Williams,* 15 *Mass. R.* 193. But secondly, if the day of the death of the testator is to be *excluded* from the computation, then the

*Fairfield,*
*June,* 1846.

Sands
*v.*
Lyon.

year expired on the 2nd of *October ;* and that day being *Sunday*, the tender should have been made on the *Saturday* preceding. The will required the payment to be made " in one year ;" and all the *Sundays* in the year may as well be excluded as the last. The court cannot *extend* the time limited by the will. *Alderman* v. *Phelps,* 15 *Mass. R.* 225.

In *Thayer* v. *Felt,* 4 *Pick.* 354. the court proceeded on the ground that the statute could not be carried into effect upon any other principle than by excluding *Sundays ;* and in *Avery* v. *Stewart,* 2 *Conn. R.* 69. the note was payable *on* the 60th day. The party could not pay it *before* it became due ; nor *on* that day, because it was *Sunday.* It was therefore held, that he might pay on the *Monday* following.

*Hawley* and *Dutton,* contra, contended. 1. That the day of the testator's death must be *excluded* in the computation. Here the character of the bequest, and the object of the condition, are to be regarded. The object of the testator was, to give the defendant the *land,* and the daughters *pecuniary legacies* only ; and the only object of the condition was, to *secure payment* of such legacies. *Walker* v. *Wheeler,* 2 *Conn. R.* 196. 199, 200. The construction must be such as will carry these objects into effect. The testator intended to prescribe a *definite period* within which payment was to be made, *viz.* " one year." For this purpose, there must be a definite commencement and expiration. The year must begin with a day, and end with a day, regardless of any *fraction* of a day. The day is always excluded, when used by way of computation— when used to fix a *terminus* from which to compute time. *Hatter* v. *Ash,* 1 *Ld. Raym.* 85. *Pierpont* v. *Graham, cor. Washington, J.—C. C. U. S. April* 1820. If the meaning of the words is doubtful, such construction is to be given as will save the estate, rather than create a forfeiture. *Bigelow* v. *Wilson,* 1 *Pick.* 494. Ex parte *Fallon* & ux. 5 *Term R.* 283, 7. Suppose the testator had required payment to be made within *one day* after his decease; would this have *included* the day of his decease, so that payment must be made on the *same* day ? *Watson* v. *Pears,* 2 *Campb.* 294. *Lester* v. *Garland,* 15 *Ves.* 246. *Dowling* v. *Foxall,* 1 *Ball & Beat.* 192. 196. *Portland Bank* v. *Maine Bank,* 11 *Mass. R.* 204.

*Fairfield,*
June, 1846.

Sands
*v.*
Lyon.

2. That the last day of the year being *Sunday,* a tender on the *Monday* following, was good. *Avery* v. *Stewart,* 2 *Conn. R.* 69. 73. 84. *Cock* v. *Bunn,* 6 *Johns. R.* 326. and note *a.* (2nd ed.) The rule being established, it ought not to be disturbed ; for this is one of that class of cases where it is more important that the rule should remain fixed, than it was originally which way it should be decided.

3. That the tender must now be regarded as sufficient. The charge put it to the jury to determine, whether the defendant was *prevented,* by the conduct of the defendant, from producing the money, and making an actual offer of it ; and they have decided that he was. That under such circumstances, the tender is good, is unquestionable. *Gilmore* v. *Holt,* 4 *Pick.* 258. *Harding* v. *Davies,* 2 *Car. & Pa.* 35. (12 *E. C. L.* 35.) *Cruise Est. on Cond. ch.* 2. *s.* 28.

Storrs, J. The first question is, whether, on the facts found by the jury, there was a tender by the defendant to the plaintiff, of the amount to which the latter was entitled, or that which was equivalent. A tender is an offer to pay a debt or discharge a duty. In the case of a debt or pecuniary claim, to constitute an offer to pay it, as a general rule, the actual production of the money, and the placing it in the power of the person who is entitled to it to receive it, is requisite. But such production of it is not necessary, when it is prevented by the party entitled to it, or he expressly waives its production, or does what is equivalent. All the authorities are to this effect.

In the present case, it is objected, that the money was not actually produced by the defendant. The reply of the plaintiff, found by the jury to have been made to the defendant, when the latter informed him that he was ready to pay him his legacy, and was in the act of producing the money from his pocket, was clearly tantamount to an express refusal to receive it, and was therefore a waiver of its formal production ; and in addition to this, the jury have found, that the production of it was prevented, by the conduct of the plaintiff. It would be trifling with justice to allow a party to set up the want of a formality which he had thus prevented, or expressly dispensed with. There is, therefore, no ground for this exception to the charge below, which indeed presented this

point to the jury in the most favourable form for the plaintiff.

The next enquiry is, whether the tender by the defendant, on the 3d day of *October* 1842, the preceding day being *Sunday*, was, according to the true construction of the will of *Joshua Lyon*, made " within one year next after his decease," which occurred on the 2d day of *October* 1841 ; and this depends on two questions : first, whether, in the computation of the year within which such tender should be made, the day of the death of said *Joshua* should be excluded ; and, secondly, whether, if it is to be excluded, the tender was good on the *Monday* succeeding the expiration of the year, according to that mode of computation.

If the will is to be construed literally, the computation must be *de momento in momentum*, commencing with the precise moment of the day when the testator died. But it is conceded that this mode is not to be adopted, because it would be opposed to a well established maxim of law, that there is no fraction of a day ; it being considered an indivisible point of time ; a technical rule founded in convenience, and which is not to be departed from, excepting when, in particular cases, justice requires that the exact time when several acts were done, should be ascertained ; as, for instance, in order to determine a question of priority of right between parties ; in which case, the maxim is disregarded, on the principle that a fiction of law shall never be allowed to work a wrong ; and therefore, in such cases, the exact time of doing the act may be shown ; an exception to the rule which does not apply to the present case. It results from this maxim, that in the computation of the year, in the present case, the whole day of the death of the testator must be either excluded or included ; and that, therefore, the defendant is to be allowed somewhat more or less time for performing the condition of the devise to him, than the time mentioned in the will, if it were to receive a strict literal construction. As such a construction of the will must be discarded, the language of the devise must be construed according to the sense and meaning in which its language is commonly used and received among mankind, which is presumed, in the first instance, to be the sense in which it was intended to be used ; or else in some other and peculiar sense, if such appears to have been the meaning intended by the testator ; or, if construing the language according to its

ordinary meaning, where it is not used in any peculiar sense, his intention is left doubtful, in such a manner as will most probably carry into effect such intention ; or else in some artificial or technical sense attached to it by the law.

In every point of view in which this subject can be considered, we are of opinion, that the day of the testator's death, in the present case, should be excluded, in the computation of the time within which the defendant was required to make the payment of money mentioned in the devise in question. In the first place, there is no reason for believing, nor is it claimed, that the testator intended to use language, in the present instance, in any sense which was peculiar or different from its ordinary import. In the next place, we are clearly of opinion, that it would accord with the meaning, which would, in common parlance, be generally attached to the language of the testator, as applicable to the subject matter of this devise, to construe it as excluding the day of his death, in computing the time within which the acts of the defendant mentioned in it were to be done. And when the rule applies, that the language is to be construed according to its ordinary import, it means, that import as applicable to the subject matter respecting which the language is used ; because the meaning of words, in their common acceptation, can only be ascertained, by referring to the subject matter about which they are conversant ; especially, if the same words are generally used in different senses when applied to different subjects, as is the case with a great proportion of the words and phrases of our language.

The word " after," which is used in the devise we are considering, like " from," " succeeding," " subsequent," and similar words, where it is not expressly declared to be exclusive or inclusive, is susceptible of different significations, and is used in different senses, and with an exclusive or inclusive meaning, according to the subject to which it is applied ; and, as it would deprive it of some of its proper significations to affix one invariable meaning to it, in all cases, it would, of course, in many of them, pervert it from the sense of the writer or speaker. Its true meaning, therefore, in any particular case, must be collected from its context and subject matter, which are only means by which the intention is ascertained ; and we do not entertain a doubt that, by the language of the

testator, in the present instance, it would be generally understood, that the payment mentioned in the devise, was to be made within a year after the day of the testator's decease, excluding that day in the computation, rather than that it was to be made within a year from the day preceding his decease. The money was to be paid within a specified period after his decease; and it would be generally understood, therefore, that that event must take place before the time from which the payment was to be made, is to be computed; and as the maxim which has been mentioned, would exclude the remaining portion, after his death, of the day on which it occurred, the computation of the year must commence with the beginning of the succeeding day; whereas, on the other construction, the computation of the time, after the death, within which the payment was to be made, would embrace a period of time before the death occurred.

It is however claimed by the defendant, that a general positive rule of construction is established, by the authorities, that where time is to be computed from the doing of an act, or the happening of an event, the day on which the act was done or the event happened, is always to be excluded. The effect of such a rule would be to give an artificial and arbitrary meaning to the language employed in such cases, which would be irrespective of the intention in any particular case; and would, in many cases, obviously thwart that intention. We certainly should not adopt a rule which would have such an effect, unless we were compelled to do so, by authorities which are absolutely insurmountable. We are satisfied, however, that whatever may have been anciently the views of the courts on this subject, the rule is at present well established, that no absolute, and invariable sense is to be attached to the word "after," used in the cases mentioned; but that it is to be taken to be exclusive or inclusive, according as it will, in the particular case, effectuate the intention of the parties; and that, for the purpose of ascertaining that intention, the context and subject matter is to be looked at; and that instruments shall be so construed, if possible, as that they, and the rights depending upon them, shall be upheld, and not destroyed; the presumption being that instruments are designed to be effectual, and not futile.

In the case of *Pugh* v. *The Duke of Leeds, Cowp.* 714. the

question was, whether the execution of a lease for twenty-one years, to commence from the day of the date, was a compliance with a power reserved in a marriage settlement, to lease for 21 years in possession, but not in reversion ; and it depended on the question whether the phrase " to commence from the day of the date," was to be construed exclusively or inclusively of the day on which the lease bore date, because on that would depend whether the lease so executed was a lease in possession. After a minute examination of all the cases which had been decided on the construction of the words " from the day of the date," used in instruments, the court established the principle, that the meaning of these phrases was the same, and that neither of them were to have an absolute and invariable sense attached to them, but that they were to receive an exclusive or inclusive construction, according to the intention with which they were used, to be derived from the context and subject matter, and so as to effectuate, and not destroy, the deeds of parties. To reëxamine those cases, in which there is much confusion, would be a useless repetition. The principle established in that case, has been since uniformly recognized in *England* and in this country, and is, in our judgment, the only rational one which can be adopted.

The same course of reasoning, which was used in relation to the words there under consideration, apply to the case where, by the terms of an instrument, a computation is to be made from the doing of an act or the happening of an event. As to the latter, the case of *Lester* v. *Garland*, 15 *Vesey* 246. is in point. It there became necessary to determine the construction of a will, which required an act to be done within a certain period after the happening of a particular event. That was the case of a bequest of a residue of personal estate to trustees, in trust, that in case *A*. should, " within six months after [the testator's] decease," give security not to marry *B*, then, and not otherwise, the trustees should pay the amount of said estate to the children of *A*., with a proviso that it should go over, if *A*. should neglect or refuse to give such security. The court held, that six months were to be computed exclusively of the day of the testator's death ; and that as his death occurred on the 12th of *January*, and the security was given on the 12th of *July* succeeding, the condition was complied with. After an examination of all the prominent cases where

time was to be computed from the doing of an act, the master of the rolls, (Sir *William Grant*,) after remarking, that the happening of an event stands on the same ground, said, that whatever *dicta* there might be to the effect that the day of the act or event is to be always excluded, it was clear, that the actual decisions could not be brought under any such general rule.   And the cases cited by him abundantly confirmed the declaration.   He expressed the opinion, that it would be much more easy to maintain that the day of an act done, or an event happening, ought in all cases to be excluded, than that it should be in all cases included ; and after giving his reasons for that opinion, he concludes by saying, that whether the day shall be excluded or included, is not to be determined by any general rule, but must depend on the reason of the thing, according to the circumstances of the case.   We think that this case, which, on the point now before us, is precisely like the present, unless it is even stronger, inasmuch as the will there required the act to be done "*within*" instead of "*in*" the time prescribed, and which was decided by a most able court, is decisive of the present.

It is also a well established rule, that where expressions like that which we are now considering, will admit of either an exclusive or inclusive construction, and the effect of one would be to divest a right or work a forfeiture, and any doubt exists as to their meaning, they shall be so construed as to prevent this effect ; which rule is adopted in accordance with the presumed intention of the party.   If, therefore, the language used in the present case were susceptible of a doubt, it should be construed so as to exclude the day of the testator's death ; his intention plainly being, that the land should go to the devisee, and that it should be only a security for the payment of the sums mentioned in the condition.   It is not necessary to determine, whether the payment of the money by the defendant, by the true construction of this devise, is a condition precedent or subsequent ; although it would seem, by the decisions in this state, that it is considered here as being of the latter description.   *Walker* & al. v. *Wheeler* & al. 2 *Conn. R.* 299.   However that may be, the non-payment of the money is in the nature of a forfeiture ; and therefore, the rule adopted in those cases, should, in our opinion, be applied here.

On the question whether the tender was properly made on the *Monday* succeeding the *Sunday*, when, by the mode of computation which we have adopted, the money became payable by the defendant, we think that the principle adopted in *Avery* v. *Stewart*, 2 *Conn. R.* 69. sanctions the charge of the judge on the trial, and should govern this case. It was there held, that where a promissory note not negotiable, was made payable *in sixty days from its date*, and fell due on a *Sunday*, a tender on the *Monday* following, was good. The general rule on this subject, as there stated by *Gould*, J., is, that as *Sunday* cannot, for the purpose of *performing* contracts, be regarded as a day in law, it is, as to that purpose, to be considered as stricken from the calendar; though intervening *Sundays* are doubtless to be counted as in all other computations of time; because they are not appointed for the performance of any act. And this principle has been sanctioned in the other states. It is observable, that the case last cited, and the present, are alike in the mode of expression used for fixing the time of payment, the note there being made payable *in* sixty days from its date, and here the condition being that the money should be paid *in* one year next after the testator's decease. Whether, in this case, the money might have been paid or tendered at any time within the period named, or as in *Avery* v. *Stewart*, it was payable at the expiration of that period only, we do not consider it necessary to decide. We think that the defendant had, by the terms of the devise, a full year allowed him for paying the money; and therefore, that he was not bound to pay it on the *Saturday* preceding the day on which the year expired.

For these reasons, the superior court should be advised not to grant a new trial.

In this opinion the other judges concurred.

New trial not to be granted.