THE NEW YORK TRUST COMPANY, Plaintiff, *v.* PORTLAND RAILWAY COMPANY and PORTLAND RAILWAY, LIGHT AND POWER COMPANY, Defendants.

First Department, July 1, 1921.

Mortgages — sinking fund provision of railroad mortgage or deed of trust construed — " after " defined — " bonds outstanding " defined — practical construction of agreement by parties recognized by court.

The sinking fund provision in a railroad mortgage or deed of trust executed by the defendant to the plaintiff as trustee, after providing for the payment of specified amounts annually based upon the issue of a certain amount of first and refunding bonds, provided as follows: " On the first day of November in any year if a greater amount of the first and refunding bonds than five million nine hundred and eighty-two thousand dollars face value issued hereunder shall be outstanding the annual sinking fund payments due from November 1st, 1907, to November 1st, 1909, inclusive, shall be increased by a sum equal to five-twelfths of one per cent. of the amount of *bonds outstanding* [italics by court] in excess of $5,982,000 and the annual sinking fund payments due from November 1st, 1910, to November 1st, 1919, inclusive, shall be increased by a sum equal to two-thirds of one per cent. of such excess and the annual sinking fund payments due *after November 1st, 1920* [italics by court], shall be increased by a sum equal to one per cent. of such excess."

*Held,* that the word " after " was intended to mean " on and after " November 1, 1920, and that the defendant was obligated to make a

payment to the sinking fund on said date calculated on the basis of one per cent;

That the words " bonds outstanding " include those in the sinking fund, and, therefore, all bonds purchased with sinking fund moneys forming part of said fund should be included in calculating the amount to be paid by the defendants to the plaintiff as trustee.

The practical construction by the defendants of the sinking fund provision for a period of thirteen years should be considered by the court in construing said provision.

Submission of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Sherwood E. Hall* of counsel [*Hornblower, Miller & Garrison,* attorneys], for the plaintiff.

*Walter K. Earle* of counsel [*Joseph S. Clark* with him on the brief; *Sherman & Sterling,* attorneys], for the defendants.

Greenbaum, J.:

The controversy involves the construction of a railroad mortgage or deed of trust executed by the defendant Portland Railway Company to the plaintiff as trustee and particularly of that portion of the instrument which deals with provisions thereof requiring stated sinking fund payments to be made by the mortgagor.

The defendant Portland Railway Company, incorporated in 1905 under the laws of the State of Oregon, was the owner of a street railway system in the city of Portland, Ore.   On April 30, 1908, it conveyed all of its properties and franchises to the defendant the Portland Railway, Light and Power Company.

The aggregate amount of bonds authorized under the mortgage was $10,000,000 and it was contemplated that the initial issue should be limited to $5,982,000.

After the initial issue of upwards of $5,000,000 of bonds, there were issued additional bonds aggregating $2,541,000, thus making a total issue of the first refunding bonds prior to November 1, 1920, in the principal sum of $8,523,000, of which on November 1, 1920, $988,000 in amount were in the sinking fund.

It appears from the submission that " shortly before

First Department, July, 1921.          [Vol. 197

November 1, 1920,. the question arose between the parties as to the amount of the payment into the sinking fund which would be due on that date." The defendants claimed that only $60,000 was payable on that day and that no additional payment would then be due, and further that the bonds held in the sinking fund should not be included in calculating the amounts due upon the specified percentages. On October 28, 1920, the defendant Portland Railway Company paid to the plaintiff as said trustee the sum of $60,000 on account of the sinking fund in accordance with the provisions of section 1 of article 4 of the said mortgage. This payment was made and received without prejudice either to the rights of the plaintiff to claim and demand additional payment or to the rights of the defendants to a restatement of the account and a claim to a refund because of previous overpayments through not deducting sinking fund bonds in calculating the percentage.

It also appears from the submission that on November 19, 1920, plaintiff demanded of the defendants " the further sum of $25,410 as an additional payment to the sinking fund due to it as of November 1, 1920, together with interest thereon at the rate of 6 per cent. per annum over and above the payment of $60,000 which had been previously paid. The payment of the $25,410 was demanded as being one per cent. of the total bonds issued on November 1, 1920, in excess of $5,982,000 including the sinking fund bonds previously purchased; " that the defendants declined to pay the sum of $25,410 so demanded, " upon the grounds as set forth in said refusal that, (1) the only payment required by said sinking fund on November 1, 1920, was the said sum of $60,000, which they had previously paid, and (2) if any excess payment would be due under the mortgage it would not be the sum of $25,410, but would be 1% upon the total amount of bonds issued and still outstanding in excess of $5,982,000, not including the bonds purchased and paid for with sinking fund moneys."

It also appears that cash payments have been made up to November 1, 1920, to the plaintiff as trustee in annual amounts, which in each instance equalled the fixed sum plus the percentage on all bonds then issued in excess of $5,982,000. In other words, there was no question whatever raised until

November 1, 1920, that it was the duty of the defendants to make these payments as just stated.

Two questions are presented: (1) Whether the sinking fund payment due on November 1, 1920, was limited by the terms of the mortgage to $60,000, and (2) whether the annual payments to the sinking fund based upon a percentage of the amount of outstanding bonds in excess of the initial issue of bonds include bonds held in the sinking fund.

The controversy involves an interpretation of what is known as the " sinking fund provision," known as article 4, section 1, of the trust mortgage, which in part reads as follows:

" Section 1. The railway company covenants and agrees to pay in cash to the trustee for and on account of a sinking fund for the retirement of the first and refunding bonds, on or before the first day of November, 1907, not less than twenty-five thousand dollars and thereafter to pay annually on the first day of November in each year, until and including the first day of November, 1909, not less than twenty-five thousand dollars and to pay on the first day of November, 1910, not less than forty thousand dollars and thereafter on the first day of November in each year until and including the year 1919 to pay not less than forty thousand dollars and on the first day of November, 1920, to pay not less than sixty thousand dollars and thereafter on the first day of November in each year until the maturity or final payment of all the first and refunding bonds issued hereunder to pay not less than sixty thousand dollars.

" The above specified amounts are based upon the issue of five million nine hundred and eighty-two thousand dollars face value of first and refunding bonds.  On the first day of November in any year if a greater amount of the first and refunding bonds than five million nine hundred and eighty-two thousand dollars face value issued hereunder shall be outstanding the annual sinking fund payments due from November 1st, 1907, to November 1st, 1909, inclusive, shall be increased by a sum equal to five-twelfths of one per cent. of the amount of *bonds outstanding* [italics ours] in excess of $5,982,000 and the annual sinking fund payments due from November 1st, 1910, to November 1st, 1919, inclusive, shall be increased by a sum equal to two-thirds of one per cent. of such excess and

the annual sinking fund payments due *after November 1st, 1920* [italics ours], shall be increased by a sum equal to one per cent. of such excess.

"The trustees shall from time to time, by private purchase from brokers, or otherwise, invest the moneys in the sinking fund in the purchase of first and refunding bonds at such prices as the railway company shall deem reasonable, not exceeding the face value of said bonds, plus five per cent. premium and accrued interest. * * * All bonds so purchased or drawn for the sinking fund shall be retained without cancellation as a part of the sinking fund and the interest on such bonds shall be paid by the railway company as it shall become due, in addition to the annual payments for the sinking fund herein required; and such interest, when and as paid, shall be held and invested in like manner as the other moneys in said sinking fund. * * *"

The italicized words in the foregoing excerpt are responsible for the controversy between the parties.

The first ground upon which the defendants relied in refusing to pay plaintiff's demand is based upon the following words in the provision above quoted in which the word "after" has been italicized: "And the annual sinking fund payments due *after* [italics ours] November 1st, 1920, shall be increased by a sum equal to one per cent. of such excess." The defendants argue that the word "after," before the words "November 1st, 1920," indicates that no payment was to be made to the sinking fund on that date.

Removed from its context, there is plausibility in arguing that the word "after" excludes November 1, 1920. But the phrase immediately preceding the one relied upon speaks of "annual sinking fund payments" due from November 1, 1910, to November 1, 1919, inclusive, shall be increased by a sum equal to two-thirds of one per cent of such excess (*i. e.,* the amount above $5,982,000), thus indicating that after November 1, 1919, a new annual percentage rate was to prevail, to wit, one per cent. We have thus an apparent ambiguity in the use of the word "after," if the strict construction which defendant urges is to be given to it. Such a definition of "after" seems to be an apparent contradiction to the scheme of annual payments outlined in the sinking

fund paragraph. No reason appears why a year's payment should be arbitrarily eliminated from a plan apparently providing for an unbroken continuity of annual payments.

The word " after," according to lexicographers and courts, has a very elastic meaning and should be determined from its context. In *Connelly* v. *O'Brien* (166 N. Y. 408) the court in construing a will said: " The adverbs of time, therefore, such as *when, then, after, from* and *after,* etc., in a devise of a remainder limited upon a life estate, are construed to relate merely to the time of the enjoyment of the estate and not to the time of its vesting in interest."

In Bouvier's Law Dictionary (Vol. 1 [Rawle's Rev.], p. 113), " after " is thus defined: " There is no invariable sense, however, to be attached to the word, but like ' from,' ' succeeding,' ' subsequent ' and similar words, where it is not expressly declared to be exclusive or inclusive, is susceptible of different significations and is used in different senses, as it will in the particular case effectuate the intention of the parties. Its true meaning must be collected from its context and subject-matter in any particular case."

In *Sands* v. *Lyons* (18 Conn. 27) the court said: " The word ' after ' which is used in the devise we are considering, like ' from,' ' succeeding,' ' subsequent ' and similar words, where it is not expressly declared to be exclusive or inclusive is susceptible of different significations and is used in different senses, and with an exclusive or inclusive meaning, according to the subject to which it is applied. * * * Its true meaning, therefore, in a particular case, must be collected from its context and subject-matter, which are the only means by which the intention is ascertained."

The idea which runs through the sinking fund provisions is that the payments were to be made annually. It is evident that the intention of the parties to the instrument was that November first should be included and not excluded. The word " after " was clearly intended to mean " on and after " November 1, 1920.

We are of opinion that the defendants were obligated to make a payment to the sinking fund on November 1, 1920, calculated on the basis of one per cent.

The remaining question calls for an interpretation of the

term "bonds outstanding" as used in the sinking fund article. The defendants claim that the words "bonds outstanding" include only bonds outstanding in the hands of the public and not those which have found their way into the sinking fund. In support of this contention defendants lay stress upon the opening portion of article 4, which reads as follows: "The railway company covenants and agrees to pay in cash to the trustee for and on account of a sinking fund for the *retirement* [italics ours] of the first and refunding bonds," etc. It is argued that the word "retirement" means what it says, that is, that the bonds were to be retired and having been retired that they may no longer be deemed outstanding. That is to say, we are to assume that the moment a bond is purchased by the trustee for the sinking fund it becomes extinct, dead, a mere piece of waste paper, valuable perhaps only as evidence that it once existed, but which has been fully discharged. This reasoning is more subtle than convincing in view of the dictionary meaning of the word "outstanding," the obvious purpose of the sinking fund and the clear intention of the parties contrary to defendants' contention gathered from various portions of article 4.

The Oxford Dictionary defines "outstanding" as follows: "that stands over or continues in existence, that remains undetermined, unsettled or unpaid."

The Century Dictionary defines "outstanding" thus: "To stand over; remain untouched, unimpaired, unsettled, uncollected, unpaid or otherwise undetermined; as *outstanding* contracts."

Its precise meaning, however, must depend upon the circumstances under which it is used. So far as the general public is concerned, the bonds which came into the sinking fund may be deemed as retired and, therefore, not outstanding, since they are not available for purchase. But so far as the sinking fund is concerned, which was created for the greater security of the bondholders, the bonds have not ceased to exist, as will appear from the following extract from article 4 above quoted: "All bonds so purchased or drawn for the sinking fund shall be retained without cancellation as a part of the sinking fund, and the interest on such bonds shall be paid by the railway company as it shall become due, in addition

to the annual payments for the sinking fund herein required; and such interest, when and as paid, shall be held and invested in like manner as the other moneys in said sinking fund."

Here we have an unequivocal declaration that the bonds in the sinking fund shall be retained without cancellation and that interest thereon shall be paid by the defendants. It is highly improbable that a bond is to be regarded as retired within the meaning given to that by defendants when it is not to be canceled and when interest is to paid thereon.

A similar situation to that here presented was considered in *Columbia G. & E. Co.* v. *Knickerbocker Trust Co.* (152 App. Div. 5, 9, 10) in which the court in construing the words " then outstanding " used the following language, which is quite *apropos* to the case under review: " In our opinion the proper construction of the disputed phrase, and the only one which will fully carry out the intention of the parties when the mortgage was executed, is to hold that the stipulated annual percentages should be calculated upon the whole issue of bonds intended to be secured thereby, including such as may have been purchased and retired by the trustee with the percentages already paid to it. This amounts to treating the bonds so purchased and retired as still ' outstanding ' as between the plaintiff and the trustee. In other words, for the purpose of the sinking fund the bonds purchased should be treated as investments by the trustee of the accumulated and paid percentages. In fact, section 1 of article 3 expressly refers to the act of the trustee in purchasing such bonds as an investment. For any other purpose than for determining the sum upon which the percentage is to be calculated, the bonds so purchased are to be redeemed. This construction gains some support from the circumstances that it is not provided as to bonds purchased by the trustee with the sinking fund payments that they shall be ' canceled,' but only that they shall be ' redeemed.' "

There are further reasons why the defendants' contention may not prevail. The submission states that " on October 19th, 1905, Mr. F. I. Fuller, then the president of the defendant, Portland Railway Company, wrote a letter to Messrs. Redmond & Co., Bankers, who had agreed to underwrite and float the contemplated initial issue of $5,982,000 of the said

issue of first refunding bonds, a copy of which is thereto attached and marked exhibit ' E.' " The letter exhibit " E " contains the following statement: " A sinking fund has been created under the terms of the mortgage whereby the company pays to the trustee sums not less than $25,000 a year. * * * These sums are to be invested by the trustee in the first and refunding fives if purchasable at or below 105 and interest. If not obtainable by purchase at or below 105 and interest, bonds are to be drawn by lot at that figure. *Bonds so purchased or drawn are to be kept alive in the sinking fund and the interest thereon added to the annual amount devoted to the retirement of the bonds.*" (Italics ours.)

Here we have a declaration on the part of the president of the defendant company at the time when the bonds were to be negotiated that the bonds so purchased are " to be kept alive in the sinking fund " and that the " retirement " of the bonds simply referred to a retirement which removed them from sale to outsiders.

The submission also sets forth a schedule showing the dates and amounts of cash payments which have been made by the Portland Railway Company and its successor to the trustee on account of the said sinking fund commencing on November 1, 1907, to October 28, 1920, a period of thirteen years. The payments therein referred to, except one on October 28, 1920, are the fixed sums stipulated together with the additional sums equal to the specified percentage of bonds issued in excess of $5,982,000 as set forth in article 4 of the trust mortgage. It is admitted in the submission that " no question was raised by the company or by any party of the liability of the company to include bonds in the sinking fund in calculating the amounts due to the sinking fund based upon the specified percentages until shortly before November 1, 1920, and until shortly before November 1, 1920, the percentages have been calculated and the amounts of the payments arrived at by treating bonds purchased with sinking fund moneys and held in the sinking fund, as bonds outstanding."

We have thus a practical construction by the defendants themselves for a period of thirteen years which accords with the claim of the plaintiff. The practical construction of the parties to an agreement for many years has been recognized

by the courts as a valuable factor in construing ambiguous clauses and agreements. (*French* v. *Carhart*, 1 N. Y. 96; *City of New York* v. *New York City R. Co.*, 193 id. 543; *Syms* v. *Mayor, etc.*, 105 id. 153.)

We think sufficient has been indicated to warrant the conclusion that all bonds purchased with sinking fund moneys and forming part of the sinking fund should be included in calculating the amount to be paid by the defendants to the plaintiff as trustee.

There must be judgment for the plaintiff for the sum of $25,410 with interest thereon from November 1, 1920, at the rate of six per cent.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment ordered for plaintiff for $25,410, with interest from November 1, 1920, at six per cent.    Settle order on notice.