(No. 47574.–)

SPRINGFIELD LAKESHORE IMPROVEMENT ASS'N *et al.* v. THE CITY OF SPRINGFIELD *et al.*—(Township of Capital, Appellant, v. Otto Langfelder *et al.*, Appellees and Cross-Appellants.)

*Opinion filed Nov. 17, 1975.—Rehearing denied Jan. 22, 1976.*

CREBS, J., took no part.

R. E. Dehen, of Springfield, for appellant.

Sorling, Northrup, Hanna, Cullen and Cochran, of Springfield (William S. Hanley, of counsel), for appellees and cross-appellants Otto Langfelder *et al.*

Daniel Bradley Blodgett, Corporation Counsel, of Springfield, for appellee city of Springfield.

Raymond L. Terrell, of Drach, Terrell and Deffenbaugh, of Springfield, for appellee township of Woodside.

John M. Kimble and John K. Surman, of Springfield, for appellee township of Curran.

Jack B. Teplitz and James M. Tomlin, of Peoria, for *amicus curiae* the city of Peoria.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs filed a three-count class action for declaratory judgment and injunctive relief against defendants City of Springfield and Township of Capital, challenging certain aspects of defendants' annexation program. Joined as defendants were those townships adjacent to Capital Township and Ernest A. Ostermeier, the County Clerk of Sangamon County. The circuit court of Sangamon County granted in part plaintiffs' motion for summary judgment as to count I of the complaint, holding unconstitutional section 1 of "An Act to authorize county boards in counties under township organization, to organize certain territory situated therein as a town, and to provide for annexation of territory to and the disconnecting of territory from said town" (Ill. Rev. Stat. 1973, ch. 139, pars. 127-133a; originally enacted in 1877 (Laws of 1877, p. 212) and hereinafter cited as the Act of 1877). This direct appeal, concerning only count I of the complaint, is taken pursuant to our Rule 302(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(a)) which allows direct appeals from final judgments of circuit courts in cases in which a statute of this State has been held invalid.

Plaintiffs are a group of property owners and electors residing at Lake Springfield, an unincorporated area bordering the City of Springfield and within the defendant townships located adjacent to Capital Township. Plaintiffs' property lies in the path of planned annexation by the City of Springfield under section 7—1—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 7—1—13) which permits a municipality to annex wholly surrounded areas of 60 acres or less without the consent of the electors residing in the area. As organized pursuant to the Act of 1877, Capital Township is coterminous with the City of Springfield; whenever the City annexes territory, that territory automatically becomes a part of Capital Township under section 1 of the Act, so that the township and city boundaries remain coterminous:

"Whenever such a city, at any one time, shall have

annexed or shall hereafter annex any territory in an adjacent township, upon receipt of a certified copy of the resolution or ordinance of the city annexing such territory, such annexation shall disconnect such territory from the town or towns in which it may be situated and annex the same to the town in said city and the county clerk, upon receipt of a certified copy of the resolution or ordinance of the city annexing such territory, shall enter such boundary change in the official records of his office." (Ill. Rev. Stat. 1973, ch. 139, par. 127.)

In a 1911 referendum, the electors of Capital Township adopted the provisions of "An Act concerning townships lying wholly within cities of more than 50,000 population" (Ill. Rev. Stat. 1973, ch. 139, pars. 134-140a), which make the county clerk and treasurer of Sangamon County the *ex officio* officers of the township. Under these laws, Capital Township has been expanding as the City of Springfield annexes territory, causing the adjacent townships to be reduced in size, without public referenda being held in any of the affected townships.

The Illinois Constitution of 1970 includes a new provision regarding township government:

"The General Assembly shall provide by law for the formation of townships in any county when approved by county-wide referendum. Townships may be consolidated or merged, and one or more townships may be dissolved or divided, when approved by referendum in each township affected. All townships in a county may be dissolved when approved by a referendum in the total area in which township officers are elected." (Const. 1970, art. VII, sec. 5.)

Plaintiffs contend that the second sentence of this section requires that a referendum be held before either Capital Township or the City of Springfield may expand its boundaries in the manner previously described because such expansions constitute a division of the adjacent townships which lose part of their territory to Capital Township. The circuit court agreed in part, ruling that township expansions under the Act of 1877 occurring

since the effective date of the new constitution are invalid, but that municipal annexations are unaffected by article VII, section 5; it accordingly "rolled back" the boundaries of Capital Township to those existing on July 1, 1971, the effective date of the 1970 Constitution, thus leaving the annexed territory a part of the City but still within the adjacent townships. Only Capital Township appeals from the decision regarding township boundaries. Plaintiffs cross-appeal from that portion of the decision which held valid the annexations by the City of Springfield under section 7—1—13 of the Municipal Code without holding public referenda.

The issue for our consideration is whether the annexation of territory to Capital Township results in one or more townships being "divided" within the meaning of section 5 of article VII ("Townships may be consolidated or merged, and one or more townships may be dissolved or divided, when approved by referendum in each township affected"), since clearly the annexations involved here do not involve the consolidation, merger or dissolution of one or more townships. Our review of the proceedings of the constitutional convention has shed little if any light on the intention of the drafters of article VII regarding the meaning of "divided." (See 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3392-3394; hereinafter cited as Proceedings.) Our analysis of other relevant factors, however, compels the conclusion that "divided" was not meant to encompass situations in which township boundaries are changed without an increase or decrease in the number of townships. The major focus of section 5 is upon the formation and dissolution of township government. "Divided" is included in a sentence with the words "consolidated," "merged," and "dissolved," which refer to instances in which particular township governments would cease to exist, either because two or more townships are joined to form a single township or because township government is simply eliminated. In such a context,

"divided" logically refers only to those situations in which one or more townships are separated in such a fashion as to create additional townships that did not previously exist. The language used by the drafters elsewhere in article VII supports this interpretation. Section 2 of article VII states:

> "(a) The General Assembly shall provide by law for the formation, consolidation, merger, division, and dissolution of counties, and for the transfer of territory between counties.
>
> (b) County boundaries shall not be changed unless approved by referendum in each county affected."

The separate and specific reference in section 2 to the transfer of territory between counties and to changes in county boundaries indicates the drafters believed that such boundary changes were not included within the meaning of "consolidation, merger, division, and dissolution." Had they intended the referendum requirements of section 5 to apply to boundary changes between townships, they presumably would have so provided in terms similar to those utilized in section 2 regarding county boundary changes. Instead, they employed only the terms "consolidated," "merged," "dissolved" and "divided," making plain, in our view, their intention that simple boundary changes between townships need not be preceded by public referenda in the affected townships. In the present case, the annexation of territory by the City of Springfield and Capital Township involves nothing more than boundary changes. Capital and its surrounding townships all continue in existence; none has been dissolved and no new townships have been created. No public referendum is therefore required in the affected townships prior to such annexations.

While our decision is thus compelled by what we consider to be the clear meaning of section 5 of article VII, we recognize that in exceptional circumstances our interpretation of section 5 might permit the piecemeal dissolu-

tion of a township without a public referendum, at least until the annexation of the last parcel in the township. We recognize, too, that the problems inherent in the annexation policies pursued under the existing statutes are well demonstrated by this case. The result of the annexations to the City of Springfield, and the automatic transfer of territory so annexed from the adjacent townships to Capital Township, has been to create a grotesquely shaped area comprising the coterminous city and Capital Township, on the fringe of which are several small areas completely isolated from the balance of the township of which they are a part. That such a result is undesirable seems to us obvious. The remedy sought by plaintiffs, however, is at least equally troublesome. Apart from the fact that interpreting section 5 of article VII to require a referendum prior to an annexation which does not change the number of townships is in our opinion a clear exaggeration of the intent of that section, such construction would require a referendum in both townships before even a single lot could be annexed.

What is involved here is another of the many problems associated with the plethora of local governmental units in this State. Elimination of those problems is the obligation of the members of the General Assembly, not the judiciary, and we commend the subject matter of this litigation to their attention.

As earlier indicated, that portion of the circuit court judgment approving annexation by the City of Springfield without a public referendum is correct and requires no discussion.

Accordingly, the judgment of the circuit court of Sangamon County is affirmed in part and reversed in part.

*Affirmed in part and reversed in part.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.