THE TOWN OF BENTON, Plaintiff-Appellant, v. THE CITY OF ZION, Defendant-Appellee.

Second District   No. 2—89—0248

Opinion filed March 6, 1990.

William G. Rosing and Stephen G. Applehans, both of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellant.

Lee A. Sparks, of Law Office of Lee A. Sparks, of Zion, and Berle L. Schwartz, of Highland Park (Andi C. Goldfine, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Town of Benton, a township governmental unit in Lake County, appeals from the judgment entered in favor of defendant, City of Zion. Defendant annexed various portions of plaintiff township's territory pursuant to the automatic annexation provision of section 1 of "An Act to authorize county boards in counties under township organization, to organize certain territory situated therein as a town, and to provide for annexation of territory to and the disconnecting of territory from said town" (the Act) (Ill. Rev. Stat. 1987, ch. 139, par. 127). Pursuant to another provision of section 1 of the Act, plaintiff demanded payment of funds equal to the real estate taxes collected on the annexed territory. Defendant refused; plaintiff filed a complaint; the matter was tried; judgment was entered in favor of defendant; and this appeal followed.

No issue of fact is presented. The only property in contention was property annexed by defendant on the effective date of the Act as amended by section 2 of "An Act in relation to the annexation by a city coterminous with a township of territory located in an adjacent township" (the Amendatory Act of 1986) (Pub. Act 84—1261, eff. Aug. 11, 1986) (amending Ill. Rev. Stat. 1985, ch. 139, par. 127). The sole issue on appeal is whether section 1 of the Act requires defendant to compensate plaintiff for lost real estate tax revenue derived from the property "automatically" annexed by defendant and disconnected from plaintiff on the *effective* date of the Amendatory Act of 1986.

The trial court ruled that the compensation provision of the Act did not apply to the automatic annexation provision of the Act for two reasons. First, since the "automatic" annexation took place "on" the effective date of the amendment, and the compensation provision applied only to annexations occurring "after" the effective date, the

compensation provisions did not apply to the "automatic" annexations made on the first day the statute took effect. The trial court assumed that the drafters of the statute, by using different language, intended the distinction between "on" and "after." Second, the trial court interpreted the limited legislative history as indicating that the compensation provisions were intended by the legislature as an incentive to adjacent townships to agree to disconnection in situations where a referendum is mandated. Further, since an automatic annexation did not mandate a referendum, no incentive via reimbursement for taxes would be needed to induce a disconnecting township to agree to the disconnection.

We disagree with the trial court's interpretation of the statute and its legislative history. Our following analysis concludes the trial court incorrectly entered judgment for the defendant.

Prior to 1986, the Act provided that, whenever a city annexed property that was in an adjacent township, the township boundaries would change automatically and the territory would be disconnected from the adjacent township and annexed to the coterminous township. (Ill. Rev. Stat. 1985, ch. 139, par. 127.) The alteration of township boundaries occurred automatically when a city annexed more property so that the township boundaries and the city boundaries remained coterminous. (*Henke v. City of Zion* (1976), 63 Ill. 2d 46; *Springfield Lakeshore Improvement Association v. City of Springfield* (1975), 62 Ill. 2d 173, 174.) Townships adjacent to expanding cities were reduced in size without any public referenda being held in the affected townships. (62 Ill. 2d at 175.) Piecemeal annexations created the undesirable result of grotesquely shaped. townships and several small areas completely isolated from the balance of the governing township. (62 Ill. 2d at 178.) Other abuses would arise when a city annexed valuable properties with a high tax base and disconnected the properties from the adjacent township. Such annexations could severely undermine a township's ability to function as a viable governmental unit as its revenue base was inexorably eliminated. (See *Nameoki Township v. Cruse* (1987), 155 Ill. App. 3d 889, 900 (the disconnected township alleged that the annexing city promised the owner of the annexed property, a steel foundry and its primary taxpayer, tax reductions when the property under it would be annexed); *cf. In re Petition to Create Emmett-Chalmers Fire Protection District* (1978), 58 Ill. App. 3d 897, 902 (disconnection of territory from fire-protection district would impair the ability of the district to render adequate services to territory remaining within the district because of lost tax revenue).) However, the old Act did allow the piecemeal dissolution of a township, without

a public referendum, up until the last parcel of the township was annexed. *Springfield*, 62 Ill. 2d at 177-78.

This environment led to the introduction into the House of Representatives of House Bill 1467 (84th Ill. Gen. Assem., House Bill 1467, 1985 Sess.), which eventually was enacted as Public Act 84—1261.

Section 2 of the Amendatory Act of 1986 created a new section 1 of the Act that was 140 lines long. Section 1 consists of 11 undemarcated paragraphs, most of which consist of a single sentence containing numerous clauses and exceptions. Although the cause before the court concerns only the last two paragraphs of section 1, we must discuss the whole statute in which those paragraphs operate.

In its final form, section 2 of the Amendatory Act of 1986 amended section 1 of the Act to provide for a referendum procedure. That part of the former statute providing for a territory's automatic disconnection from the adjacent township upon annexation by a city was deleted. Now, whenever a city proposes to annex property in an adjacent township, the city clerk must file a certified copy of the city's annexation ordinance with the clerk of the adjacent township subject to the proposed disconnection. If the board of trustees of that township determines that the disconnection would not be in the best interests of that township, the town board may request that a referendum approving or disapproving the disconnection be submitted to the voters of that township in an election. If the proposition is approved by a majority vote in the election, the territory is disconnected from the adjacent township and connected to the township coterminous with the city. If the proposition fails, the territory remains connected to the adjacent township.

Under the present Act, the town board may request a referendum on any disconnection except in two instances. First, a city may annex up to 1% of an adjacent township's territory per year causing disconnection from the adjacent township and connection to the coterminous township without a referendum. The 1% is calculated on the basis of the total equalized assessed value of the adjacent township. Second, any unincorporated territory surrounded or nearly surrounded by a coterminous township shall automatically, by operation of law, become annexed to the city, disconnected from the adjacent township and connected to the coterminous township without the referendum procedure. This last provision is referred to as the "automatic" annexation provision regarding the problems of "doughnut hole" annexations (as referred to in the Senate debate (84th Ill. Gen. Assem. Senate Proceeding June 18, 1986, at 74)). See also Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13.

The Act also provides the following provisions regarding compensation:

"*After* the effective date of this amendatory Act of 1986, *whenever* territory is disconnected from a township and connected to a coterminous township, the coterminous city shall provide, on or before December 31 of each year for a period of 10 years, to the township from which the territory was disconnected an amount equal to the real estate tax that was collected on the property in the tax year immediately preceding the disconnection." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 139, par. 127.

Because the trial court based its determination on the wording of the statute, we quote the automatic annexation provision as well in its entirety:

"*Whenever, on* the effective date of this amendatory Act of 1986, any unincorporated territory in a township which is adjacent to a township which is coterminous with a city (a) is wholly bounded by the coterminous township or (b) is bounded solely by (1) the coterminous township and (2)(A) a river or lake, (B) property owned by the State of Illinois, except highway right-of-way owned in fee by the State, (C) a forest preserve district, or (D) the Illinois State boundary, that territory shall automatically, by operation of law, become annexed to the city, disconnected from the adjacent township and included in the coterminous township without having the proposition to disconnect submitted to the voters in the adjacent township, except that when the unincorporated territory is, and as long as it remains, predominantly agricultural in nature, the automatic annexation shall not occur." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 139, par. 127.)

Section 3 of the Amendatory Act of 1986 provided that the Amendatory Act of 1986 took effect upon becoming a law, which happened on August 11, 1986.

As stated earlier, this cause concerns the territory automatically annexed by defendant on the effective date of the Act, and whether the compensation provisions applied to the annexation. The trial court found that the language of the statute did not create any ambiguity as to when the compensation provision became effective and, applying the usual meaning of "on" and "after," concluded that the compensation provisions did not apply to automatic annexations occurring *on* the effective date of the Amendatory Act of 1986. On the contrary, we determine the wording of the statute is ambiguous, both on its

face and in context. The trial court ignored the word "[w]henever" preceding the words "on the effective date," and these terms contradict each other. While the trial court felt compelled to "assume[] that the drafters [of the legislation] intended the distinction between 'on' and 'after' " in the two provisions, the inconsistency of the language precludes any assumptions as to the drafters' intentions. Moreover, we do not find, as the trial court found, that the statements in the legislative debates indicate any legislative intent.

■ Because the word "after" may be ambiguous in itself and in context with its surrounding words is inherently ambiguous, we must apply rules of statutory construction to interpret the Act and resolve any ambiguity in favor of an equitable operation of the law. (73 Am. Jur. 2d *Statutes* §258 (1974).) While it is a cardinal rule of statutory construction that significance be attached to every word of an act, if doing so creates an interpretation inconsistent with the intention of the legislature or creates an incongruous result, the words may be rejected as surplusage. 73 Am. Jur. 2d *Statutes* §200 (1974); see *Niebling v. Town of Moline* (1956), 8 Ill. 2d 11, 14; *People v. Parker* (1988), 123 Ill. 2d 204, 213.

■■ The Amendatory Act of 1987 also is remedial legislation, as indicated by prior case law, its very title, and the comments in the legislative debates. Remedial legislation should be construed liberally to effectuate its purposes. (*S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 298.) A court must consider a statute in its entirety and note the subject which it addresses and the legislature's apparent objective in enacting it. (Ill. Rev. Stat. 1987, ch. 1, par. 1002; *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690.) The words "on" and "after" cannot be read in isolation from the rest of the statute. Given the remedial purposes of the statute, we have been offered no reason why the compensation provisions should apply to all annexations except automatic annexations occurring only on the first effective date of the statute. Nothing in the legislative debates indicates that the legislature intended automatic annexations to be uncompensated, especially for *only* the first day of the legislation's effect. The disconnected township will suffer the same loss of taxpaying property under any sort of disconnection and still deserves compensation. Annexations taken pursuant to the "1%" provision are similarly conducted without a referendum being offered to the voters of the adjacent township, but no argument can be made that the "1%" provision is excluded from the benefits of the compensation provision or that the adjacent township needs some "incentive" to agree to the disconnection.

■■ Because the introductory phrases "on the effective date" and "after the effective date" of the last two paragraphs create ambiguities and would frustrate the remedial nature of legislation, we must reject the phrases as surplusage. Section 3 of the Amendatory Act of 1986 provides that the Act takes effect upon becoming law. Thus, there is language indicating when the Act should take effect independent of the surplus language. The legislature could have indicated its intent more clearly. In any event, because any other interpretation of the statutory provision would frustrate the legislative purpose in remedying the township annexation problems, we must construe the offending language as surplusage. *People v. Naber* (1989), 180 Ill. App. 3d 629, 631.

■■ ■ Even assuming the statute was unambiguous, there is no plain meaning in the word "after" because it has alternative definitions of "subsequent to" and "on or after." (Black's Law Dictionary 57 (5th ed. 1979).) Like the word "from," the word "after" is a word of exclusion unless by necessary implication it is used in a different sense. (*O'Rourke v. Prudential Insurance Co. of America* (1938), 294 Ill. App. 30, 34; *Caraher v. First Guardian Co.* (1932), 268 Ill. App. 389, 394.) The word "after" has a very elastic meaning and should be interpreted from its context. (*New York Trust Co. v. Portland Ry. Co.* (1921), 197 A.D. 422, 427, 189 N.Y.S. 346, 349.) Thus, courts have achieved different results in cases where the effective date has not been specifically included in provisions stating when an action is to be effective.

In *O'Rourke*, the court found that a life insurance policy was in effect on the issuance date as well as 10 years "from" that date. (*O'Rourke*, 294 Ill. App. at 32; see also *Nabor v. Occidental Life Insurance Co.* (1979), 78 Ill. App. 3d 288.) In *New York Trust Co.*, the court could find no reason why November 1, 1920, should be excluded as a payment date on a bond when the first day of all other Novembers in the surrounding years was included, and thus it interpreted "after November 1, 1920" as "on and after November 1, 1920." 197 A.D. at 427, 189 N.Y.S. at 350.

For the above reasons, the judgment of the circuit court of Lake County is reversed. The cause is remanded for a determination of the amount of the judgment to be entered in favor of the plaintiff.

Reversed and remanded.

REINHARD and WOODWARD, JJ., concur.