## Weeks *against* Hull, administrator of the estate of *Lot Dean.*

Where a witness called to impeach the character for veracity of another witness who had given material testimony, swore that the character of the last-mentioned witness was not upon a par with that of mankind in general, he was asked, on cross-examination, what individual he had heard speak against

*Hartford,*
June 1849.

Weeks
*v.*
Hull.

the character of that witness; it was held, that this question was a proper one. [Two judges dissenting.]

The day of the act from which a future time is to be ascertained, is to be excluded from the computation.

This rule is applicable not only to contracts, wills and other instruments, but to statutes and proceedings under them.

Therefore, where the court of probate, on the 14th of *December*, passed an order limiting six months from that time for the exhibition of claims against the estate of a deceased person; it was held, that a claim exhibited on the 14th of *June* following was exhibited in season.

THIS was an action on a promissory note; tried at *Hartford, September* term, 1848.

On the trial of the cause to the jury, on the general issue, the plaintiff having read in evidence the deposition of *S. B. Haskell,* which was material in the cause, the defendant offered sundry witnesses to impeach his character for veracity, who swore, that his character, in that respect, was not on a par with that of mankind in general. The plaintiff's counsel then enquired of one of those witnesses, what individual he had heard so speak against *Haskell?* To this the defendant's counsel objected; and the court decided, that the question was an improper one, and did not permit it to be answered.

It was agreed, that the time limited by the court of probate for the exhibition of claims against the estate of *Lot Dean,* was six months; and that the order making the limitation, was passed on the 14th day of *December,* 1846. The 13th of *June,* 1847, was *Sunday;* and the plaintiff's claim was exhibited on *Monday,* the 14th of *June,* 1849, and at no time before. Upon this state of facts, the defendant requested the court to charge the jury, that the claim was not exhibited within the time required by law, and that the action therefore could not be sustained. The court declined so to charge the jury; but instructed them, that upon these facts the exhibition of the claim was within the time limited by law.

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial.

*T. C. Perkins,* in support of the motion, contended, 1. That the enquiry made of the witness, on his cross-examination, was a proper one, and the court should have permitted him to answer it. In a case like this, the enquiry should be

48

*liberal.* The testimony to be sifted was matter of *opinion*—of opinion formed from what the witness had heard other people say. From a full investigation it might appear, that what was said came from personal enemies, grew out of a controversy, or was the result of party prejudice. *Lower* v. *Winters*, 7 *Cowen*, 263. *The State* v. *Howard*, 9 *N. Hamp.* 485. *Phillips* v. *Kingfield*, 19 *Maine R.* 375. 381. *The People* v. *Mather*, 4 *Wend.* 232. 258.

2. That the claim of the plaintiff was presented in due season.

In the first place, the 14th of *December*, the day on which the order was made, is to be *excluded* from the computation; and in that case, the 14th of *June* following, would be within the time limited. *Sands* v. *Lyon*, 18 *Conn. R.* 18. *Wiggin* v. *Peters*, 1 *Metc.* 127. *Bigelow* v. *Willson*, 1 *Pick.* 485. *Windsor* v. *China*, 4 *Greenl.* 298. *Jackson* d. *Hyer* & al. v. *Van Valkenburgh*, 8 *Cowen* 260. *Homan* v. *Liswell*, 6 *Cowen* 659. Ex parte *Dean*, 2 *Cowen* 605. *Cornell* v. *Moulton*, 3 *Denio* 12. *Chitt. Gen. Pr.* 764, 5. 774, 5. *Pellew* v. *Wonford*, 9 *B. & Cress.* 134. (17 E. C. L. 343.) *Hardy* v. *Ryle*, 9 *B. & Cress.* 603. (17 E. C. L. 456.) *Blake* v. *Crowninshield*, 9 *N. Hamp.* 304.

But secondly, even if the day on which the order was made, is to be *included*, the presentation was in season; inasmuch as the 13th of *June*, the last day of the six months, was *Sunday*. *Sands* v. *Lyon*, 18 *Conn. R.* 18. *Avery* v. *Stewart*, 2 *Conn. R.* 69. *Cock* v. *Bunn*, 6 *Johns. R.* 326. *Anon*. 2 *Hill*, 375. 376. n. *b*. *Salter* v. *Burt*, 20 *Wend.* 205.

*Bulkley*, contra, contended, 1. That the course taken by the court, on the cross-examination of this witness, was correct. The first enquiry is, Do you know the general character for veracity of the person in question? If the witness says he does not, there is an end of the enquiry. If he says he does, the question then is, what is it? On this he may be examined and cross-examined; and to this the enquiry is restricted. If you may enquire what individuals have been heard to speak on the subject, you may enquire what each one has said, what was *his* character, biases, purposes, &c. This would make the enquiry interminable and impracticable.

2. That the plaintiff's claim was not exhibited within the time limited.

In the first place, the day of making the order is to be included in the computation. The general course of authorities sustains the doctrine, that where the computation is to be from *an act done*, the day on which it is done, is to be included. *The King* v. *Adderley, Doug.* 464. *Castle* v. *Burditt,* 3 *Term R.* 623. *Glassington* v. *Rawlins,* 3 *East* 407. *Pierpont* v. *Graham,* 4 *Wash. C. C. R.* 232. 240. *Arnold* v. *United States,* 9 *Cranch,* 104. *Presbrey* v. *Williams,* 15 *Mass. R.* 193. *Jacobs* v. *Graham,* 1 *Blackf.* 392. *Ryman* v. *Clark,* 4 *Blackf.* 329. *Evans* v. *Darlington,* 5 *Blackf.* 319. 1 *Sw. Dig.* 228. *Wooden* v. *Cowles'* exr., 11 *Conn. R.* 292. 298. *Spencer* v. *Champion,* 13 *Conn. R.* 11. 16. *Wheeler* v. *Bent,* 4 *Pick.* 167. 3 *Stark. Ev.* 1399. 1400. (ed. 1826.)

Secondly, the time cannot be extended beyond that limited by the statute, because the last day happens to be *Sunday.* A statute must be as imperative at least, as the rule in relation to commercial paper.

Church, Ch. J. 1. The first question arising on this record, is, whether an impeaching witness may be enquired of, on cross-examination, from whom he had heard, or how he has received the information, of the general character of the witness impeached. Such an enquiry was excluded, by the superior court. A majority of us believe it should have been permitted.

The means of knowledge which a witness has of the truth of what he swears, and the reasons which have produced the opinions he expresses, are the best tests of his accuracy. These have always been considered as proper subjects of examination, and as essential to the discovery of truth. Such was the object, in the present case. To ascertain such means of knowledge, where character and reputation is the subject of enquiry, is as proper and necessary, as where any other question is at issue. There is no occasion where witnesses are more prone to substitute their impressions or their prejudices in the place of facts, than when testifying on the subject of character. Reputation is often affected, by suspicion, or aspersed, by malevolence; and it is not unfrequent that it is made the subject of detraction, for the very purpose of attack, on the trial where it is made the subject of enquiry.

In all these cases, it is essential that the impeachment be traced to its source, and its true nature understood. And it is still more frequently true, that some partial or isolated report is mistaken for general reputation; or that the witness puts his own personal knowledge or private opinion of integrity, in the place of general character. There are no better means of detecting such errors, and no other means that we know of, than to require the impeaching witness to disclose the source of his information. This course of examination is permitted, by courts in other states; and we know of no opposing authorities. *Lower* v. *Winters,* 7 *Cowen,* 263. *The People* v. *Mather,* 4 *Wend.* 232. *Phillips* v. *Kingfield,* 1 *Appleton,* 375. *State* v. *Howard,* 9 *N. Hamp.* 485.

But some suppose that the practice of the courts in this state, is at variance with this. To some extent, this may be true; and different judges have probably exercised a discretion in permitting or rejecting this enquiry, as the peculiarities of each case required; but we are not informed that any known and fixed practice amounting to the force of a precedent, has hitherto been adopted on this subject. An objection to this course of examination, is, that it will lead to an inconvenient and protracted enquiry, as well as, in many cases, to a betrayal of private confidence. There can be but little fear of such results; but if they should follow, to some extent, we do not think them of such importance as that they should interfere with a necessary investigation of truth. To enquire of a witness his means and opportunities of information, without going into details and circumstances, has not hitherto, in other cases, been considered objectionable, as consuming time. The common law recognises and protects but few privileged communications; such as state secrets, and others in the nature of professional confidence. These ought not to be multiplied, as they always more or less obstruct the full administration of justice. We discover no greater necessity of guarding private conversations from disclosure, in a case like this, than in actions of slander, or other cases, where confessions or admissions are every day received in evidence, though of a private nature.

2. It became a material question in this case, whether the claim of the plaintiff, on which his suit is brought, was presented to the defendant as administrator, within the time lim-

ited by the court of probate for the exhibition of claims against the estate of the deceased. The order of the court was made on the 14th day of *December*, 1846, and limited six months, for the presentment of claims. This note was presented on the 14th day of *June*, next after. If the day of the date of the order be excluded from the computation of time, and the 15th day of *December* be the first day computed, then the note was presented in time.

Hitherto, there has been considerable uncertainty and confusion as to the manner of computing time. By some of the adjudged cases, a distinction has been taken between the date, and the day of the date, of a written instrument; also, between mercantile contracts and others; and again, it has been said, that a different rule of computation prevails under contracts and under statutes. These distinctions can be of no practical use, but are well calculated to mislead. *Lester* v. *Garland*, 15 *Ves.* 248.

The case of *Sands* v. *Lyon*, 18 *Conn. R.* 28., involved the construction of a will; and in determining the time within which a legacy under the will became payable, the court excluded the day from which the computation was to commence. This was in accordance with the acknowledged rule for the construction of mercantile contracts; and the court proceeded to say, " that instruments shall be so construed, if possible, as they and the rights depending upon them, shall be upheld, and not destroyed; the presumption being, that instruments are designed to be effectual, and not futile." This language and course of reasoning is not confined to any specified instance, but embraces every instrument or contract, as well as wills, and applies as forcibly to the construction of statutes, and all proceedings under them, as to other papers, without an allusion to any of the distinctions before mentioned. That case also recognizes another conservative principle, which ought to govern both that case and this, and all others to which it is applicable—that the computation of time should be so made as to protect a right and prevent a forfeiture, if this can be done without violating a clear intention or a positive provision. *Bigelow* v. *Willson*, 1 *Pick.* 498.

We had supposed, that in this state at least, the case of *Sands* v. *Lyon*, following the case of *Avery* v. *Stewart*, 2 *Conn. R.* 69., had settled the true rule, that not only mercan-

tile contracts, such as bills of exchange, promissory notes, policies of insurance, &c., as well as wills and all other instruments, are so to be understood, as that the day of the date, or the day of the act from which a future time is to be ascertained, is to be excluded from the calculation ; although there may be some earlier cases, elsewhere, suggesting a different rule ; as *Arnold* v. *U. States,* 9 *Cranch* 104. *Pierpont* v. *Graham,* 4 *Wash. C. C. R.* 232.

So also, we are satisfied, that the modern cases, in this country, have adopted the same rule in the construction of statutes, and as governing all proceedings under them, as in cases like the one now before us ; thus establishing uniformity, where diversity of computation was both unnecessary and perplexing ; unless perhaps in some few instances, in which long usage may have been different. Ex parte *Dean,* 2 *Cowen* 605. *Homan* v *Liswell,* 6 *Cowen* 659. *Hyer* v. *Vanvalkenburgh,* 8 *Cowen* 260. *Bigelow* v. *Willson,* 1 *Pick.* 485. *Wiggin* v. *Peters,* 1 *Metc.* 127. *Cornell* v. *Moulton,* 3 *Denio* 12. *Windsor* v. *China,* 4 *Greenl.* 298. *Blake* v. *Crowninshield,* 9 *N. Hamp.* 304. 1 *Chitt. Gen. Pr.* 765. 774. and the cases there cited.

We are well satisfied, therefore, that a presentation of this claim on the 14th day of *June,* was a compliance with the order of the court of probate ; and that the charge to the jury was right. But by reason of the rejection of the evidence before noticed, a majority of the court advise a new trial.

STORRS and HINMAN, Js. concurred in this opinion throughout. WAITE and ELLSWORTH, Js. dissented on the first point, but concurred on the last.

New trial to be granted.