# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### Cromelien *versus* Brink.

A bond which a court is directed by statute to approve, will, in proceedings subsequent to it, be presumed to have been approved, although no note of approval appears on the record.

Land sold for taxes on the 10th of June, 1850, and redeemed on the 10th of June, 1852, was redeemed in time.

Replevin cannot be maintained by the former owner against the purchaser for timber cut between the time of sale and that of redemption.

ERROR to the Common Pleas of *Pike county*.

This was an action of replevin by Rowland Cromelien, and Amelia his wife, against Henry Dewitt and Archibald Brink, brought 10th April, 1854, for 216 oak logs, 38 pine logs, 1300 railroad ties, 65 pieces of ship timber, and 248 cords of bark, of the value of $1166.50. The sheriff returned, replevied, and upon a claim property bond given, property redelivered to defendants. The defendants pleaded *non ceperunt*, property in Henry S. Mott, *absque hoc*, and property in defendants, *absque hoc*.

The " Samuel Depue" tract of land was sold for.taxes by the treasurer of Pike county, on the 13th June, 1842, to Oscar H. Mott, and on the 10th November, 1853, it was conveyed by him to Amelia Cromelien, one of the plaintiffs. On the 10th June, 1850, it was again sold for taxes to Henry S. Mott, but was redeemed by Mrs. Cromelien, on the 10th June, 1852. It was sold a third time for taxes, on the 16th of June, 1852, to Archibald Brink, one of the defendants, but was again redeemed by Mrs. Cromelien, on the 14th March, 1854.

The defendants gave evidence of the sale of 10th June, 1850, to

(522)

[Cromelien *v.* Brink.]

Henry S. Mott. The Act of 5th May, 1841, § 12, *Purd.* 824, pl. 25, provides that in the counties of Pike and Monroe, the purchaser at tax sale shall give a surplus bond with surety, *to be approved by the court,* without which the deed shall not be acknowledged, and the sale be invalid. They also produced the assessment of taxes for 1848 and 1849, the entry in the treasurer's sale book of the sale to H. S. Mott, on 10th June, 1850; the deed to him acknowledged 13th June, 1850, and a paper purporting to be a surplus bond, which was endorsed "*filed* 10*th Nov.,* 1851," but not marked approved. They also gave in evidence from the "Entry book of sheriff's deeds and treasurer's deeds of Pike county" a registry of the acknowledgment of this deed on the 13th of June, 1850, opposite to which, in a column headed "bond" there is a letter "B." They then produced the entire bundle of alleged surplus bonds taken in the time of John M. Heller, treasurer (who made the sale to H. S. Mott), none of which were endorsed "approved." The plaintiff objected to the whole of the evidence of this sale on the ground that there was not only no record of the approval of the bond, but that the endorsement "filed. 10th Nov., 1851," rebutted any presumption of such approval, but the court admitted the evidence.

The questions raised in the cause were :—

1. Was the sale to H. S. Mott good under the Act of 5th May, 1841, the circumstances being as stated?

2. Is a redemption on the 10th June, 1852, from a sale made on the 10th June, 1850, in time?

3. Can the original owner, after redemption, replevy timber cut by the purchaser at tax sale, between the sale and the redemption?

The court below (BARRETT, P. J.) ruled, 1st. That the bond was sufficient, and the approval of the court would be presumed.

2d. That the redemption on the 10th June, 1852, was too late to divest the title of the purchaser under the treasurer's sale made on the 10th June, 1850.

3d. That the owner could not maintain replevin for the timber cut by the purchaser at a tax sale, between the time of sale and redemption.

A verdict was rendered for the defendants. The plaintiffs took this writ and assigned for error, the admission of the bond and other papers relating to the sale to H. S. Mott, in evidence, and the foregoing instructions to the jury.

*M. Goepp,* and *J. M. Porter,* for plaintiff in error.

*G. Mallery,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.—1. The first question is too clear for argument. If any presumption of law be reasonable, it is that which favours

[*Cromelien v.* Brink.]

the regularity of judicial proceedings until something else appears; and the greater the tendency to irregularity, the greater the necessity for violence of presumption against it. This is all that saves our records. The bond required in this case was given. The court ought to have approved it. Without such action, the acknowledgment of the deed was improper; and before convicting the judges of impropriety, some evidence is needed. The absence of any note of approval is insufficient. The letter of the law did not require it, and the omission was an informality which cannot upturn the whole proceeding.

2. The man who undertakes to reconcile the English decisions on the legal computation of time, will find himself employed in an arduous work. In Pugh *v.* The Duke of Leeds, *Cowper* 714, Lord MANSFIELD exhausted his research over two centuries of learning on this point, and concluded (page 718) by pronouncing the decisions "so many contradictions backwards and forwards." The case did a good service. It destroyed the distinction between the terms, *from the date*, and *from the day of the date;* and furnished another proof of what the common sense of that judge could do, when it ran against the subtleties which he found encumbering the law. The rule which this case established was, that the day on which an act is done must be included in counting from that act. Scarcely had this course been marked out, when the discussion in Lester *v.* Garland, 15 *Vesey* 248, once more set the law of the subject all adrift. The modern decisions have again settled it in conformity to that case (Webb *v.* Fairmanner, 3 *M. & W.* 473; Young *v.* Higgon, 6 *M. & W.* 49; Robinson *v.* Waddington, 13 *A. & E., N. S.,* 753), by laying down the uniform rule that the first day is to be excluded and the last included; and the shadowy distinction between computing time from an act done and from a particular day, referred to in Castle *v.* Burdett, 3 *T. R.* 623, is exploded. At an early period and before the English decisions last cited, this rule was adopted in Pennsylvania, in appeals from an award of arbitrators, 1 *S. & R.* 412; from the judgment of a justice of the peace, 3 *S. & R.* 496; and from a decree of the Common Pleas, 3 *Penn. Reps.* 200. In Green's Appeal, 6 *W. & S.* 327, it was applied to the revival of a judgment by *scire facias,* and the ground was wisely taken that where an Act of Assembly requires a thing to be done within a certain time from a prior date, and deprives the party of a right for omitting it, "the most liberal construction ought to be chosen, and the furthest time given from which the reckoning is to be made." But while the English decisions have thus been approaching the ground occupied in Pennsylvania, it is much to be regretted that in our recent cases a disposition has been shown to return to the antiquated rule of the common law. I refer to Thomas *v.* Afflick, 4 *Harris* 14, respecting the notice to a magistrate under the Act

[Cromelien *v.* Brink.]

of 1772, which overthrew Gosweiler's Appeal, 3 *Penn. Reps.* 200, without an attempt at either reason or authority; and also to Barber *v.* Chandler, 5 *Harris* 48, respecting the return of a summons issued by a justice of the peace. In these cases, it seems unfortunate that the recent English and American decisions were not brought to the court's attention. Marys *v.* Anderson, 12 *Harris* 272, is not obnoxious to similar remark, for that case was put expressly on the understanding of the country respecting the end of a tenant's term. The Commonwealth *v.* Maxwell, 3 *Casey* 444, decided nothing to the point; for the death of one judge occurred on the 15th of July, and the election of another on the 14th of October—clearly less than the three months specified in the Act of Assembly—and the case went on to raise an important constitutional question over the act. Every other reliable American case known to me, unites with the English cases in justifying the ground so soon taken and so long maintained in Pennsylvania. Homan *v.* Liswell, 6 *Cowen* 659; Ex parte Dean, 2 *Cowen* 605; Bigelow *v.* Wilson, 1 *Pick.* 485; Portland Bank *v.* Maine Bank, 11 *Mass.* 204; Carson *v.* Love, 8 *Yerger* 315; Cornell *v.* Moulton, 3 *Denio* 12; Weeks *v.* Hull, 19 *Conn.* 376; Varin *v.* Edmonson, 5 *Gilman* 270; The People *v.* The Sheriff of Broome, 19 *Wend.* 87. By our Act of 13th March, 1815, the redemption was to have been made within two years after the sale—phraseology which steers us clear of the criticisms on the term *from*, employed in Pugh *v.* The Duke of Leeds. Was the redemption within the time? Not, if rejecting these cases, we go back to the old rule and start on another voyage of discovery. Some of them come close to the point. In Bigelow *v.* Wilson, 1 *Pick.* 485, the time prescribed for redeeming a right in equity sold on execution was "within one year next after the time" of the execution of the deed to the purchaser, and the day on which the deed was executed was excluded. In The People *v.* The Sheriff of Broome, 19 *Wend.* 87, the three months after the expiration of a year given to a debtor to redeem lands sold on execution, were held to commence running on the day succeeding the expiration of the year. This is authority enough. The reasoning which supports these cases is more conclusive. A day is always an indivisible point of time, except where it must be cut up to prevent injustice. In the sense of these statutes it has neither length nor breadth, but simply position without magnitude. If the time for redemption were fixed at one day after the sale, that day could not be the day of the sale; for it might be made at the last moment of the day, and the owner being thus prevented from tendering on that day, would lose his right. The time mentioned must therefore be the following day. So of one year, and of two years.

3. The position of the plaintiff is not precisely that of a mort-

[Cromelien *v.* Brink.]

gagor. Though his money be tendered in time, he cannot set foot on the land, if the purchaser reject the offer. His remedy is ejectment. If profit have been made by the purchaser, a claim for *mesne* profits will sweep this into the plaintiff's pockets. Until the right is thus decided, they are simply claimants of the land by adverse titles. No authority exists to sustain replevin between such parties, for timber cut by a purchaser in possession. Such authority as we have is rather against it: 3 *S. & R.* 509; 6 *S. & R.* 476; 10 *Watts* 453; 2 *Watts* 126; 1 *Casey* 186; and no reason exists for manufacturing a new rule.

Judgment affirmed.