******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CASEY LEIGH RUTTER *v.* ADAM JANIS ET AL.

NANCY BEALE, ADMINISTRATRIX (ESTATE OF LINDSEY BEALE) *v.* LUIS MARTINS ET AL.

JASON FERREIRA *v.* LUIS MARTINS ET AL.
(SC 20122)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins and Vertefeuille, Js.*

*Syllabus*

Pursuant to statute (§ 14-60 (a) (3)), a motor vehicle dealer may loan a dealer license plate to a person who "has purchased a motor vehicle from such dealer, the registration of which is pending," for a period of "not more than thirty days in any year," and a dealer that has complied with the requirements of § 14-60 (a) is not liable for damages caused by an insured operator of the motor vehicle while the dealer license plate is displayed within that thirty day period.

The plaintiffs, in three separate actions, sought to recover damages from the defendant D Co., a motor vehicle dealer, among others, for personal injuries sustained in an automobile accident involving a vehicle driven by the defendant M and displaying D Co.'s dealer license plate. On May 9, 2013, at approximately 7 p.m., M executed an agreement with D Co. in connection with his purchase of the vehicle from D Co., and D Co. loaned M a dealer license plate pursuant to § 14-60 (a) while the vehicle registration process was pending. The accident occurred on June 8, 2013, at approximately 3 p.m. The plaintiffs alleged, inter alia, that D Co. was liable for the damages resulting from the accident because it occurred beyond the thirty day period set forth in § 14-60 (a). D Co. filed a motion for summary judgment in each action, claiming that it was not liable because the accident had occurred within the statutory thirty day period and it otherwise had complied with the requirements of the statute. In granting D Co.'s motions for summary judgment and rendering judgments thereon for D Co., the trial court concluded, inter alia, that the June 8, 2013 accident occurred on the thirtieth day after D Co. loaned M the dealer license plate on May 9, 2013, because the day on which the loan of the dealer license plate occurred did not count for purposes of the statute. The trial court thus concluded that the accident occurred within the thirty day period. The plaintiffs appealed to the Appellate Court, which affirmed the judgments of the trial court, concluding, inter alia, that the trial court properly excluded the day on which the loan of the plate was made in calculating whether the accident occurred within the thirty day time limit of § 14-60 (a). On the granting of certification, the plaintiffs filed a joint appeal with this court. *Held*:

1. The Appellate Court correctly concluded that the trial court had properly excluded May 9, 2013, the date on which D Co. loaned the dealer license plate to M, for purposes of calculating the thirty day period under § 14-60 (a), and, because May 10, 2013, was the first day of that period and the accident occurred on June 8, 2013, the accident occurred within the thirty day limitation period of § 14-60 (a): applying relevant principles of statutory construction to § 14-60 (a), which does not define the word "days" or specify how the thirty day period is to be computed, this court concluded that, in the absence of any explicit textual evidence to the contrary, the legislature intended the term "days" in § 14-60 (a) to be interpreted consistently with its established legal meaning as an indivisible calendar day that runs for a twenty-four hour period from midnight to midnight rather than a fraction of a day, and, because D Co. loaned the dealer license plate to M at approximately 7 p.m. on May 9, 2013, and, therefore, not for a full calendar day on May 9, 2013, that date must be excluded for purposes of computing the thirty day period under § 14-60 (a); moreover, such a construction is consistent with the well established rule that, in the absence of statutory language requiring otherwise, the day of the act from which a future time is to be ascertained is to be excluded from the calculation, and this court uniformly has

adhered to that rule as a matter of policy in order to ensure uniformity and predictability in the computation of statutory deadlines.

2. The plaintiffs could not prevail on their claim that a genuine issue of material fact existed as to whether the parties intended the date of the loan of the dealer license plate to be included in computing the thirty day period under § 14-60 (a), as the evidence on which the plaintiffs relied, including the terms of the loan agreement, related only to when the parties intended the loan agreement to begin running, and, as a matter of law, the intent of the parties does not bear on the issue of whether the date of the loan is to be excluded from the thirty day period, which is a question of statutory construction that depends instead on the intent of the legislature.

Argued September 23, 2019—officially released February 25, 2020

*Procedural History*

Actions, in the first and third cases, to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and action, in the second case, to recover damages for the wrongful death of the plaintiff's decedent as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Waterbury, where the cases were consolidated; thereafter, the court, *Brazzel-Massaro, J.*, granted the motions for summary judgment filed by the defendant Danbury Fair Hyundai, LLC, in each case and rendered judgments thereon, from which the plaintiff in each case appealed to the Appellate Court, *Keller, Elgo* and *Bear, Js.*, which consolidated the appeals and affirmed the trial court's judgments; subsequently, on the granting of certification, the plaintiff in each case filed a joint appeal with this court. *Affirmed.*

*James J. Healy*, with whom were *Joel T. Faxon* and *Alinor C. Sterling*, and, on the brief, *J. Craig Smith, Cynthia C. Bott* and *Nathan C. Nasser*, for the appellants (plaintiff in each case).

*James F. Shields*, with whom was *David M. Houf*, for the appellee (defendant Danbury Fair Hyundai, LLC).

*Opinion*

MULLINS, J. Subject to certain requirements, General Statutes § 14-60 (a) permits motor vehicle dealers to temporarily loan a dealer license plate to, inter alia, the purchaser of one of their vehicles while that purchaser's registration is pending, but "for not more than thirty days in any year . . . ."[1] The dispositive issue in this certified appeal is whether, for purposes of calculating that thirty day period, the "first day" is the date on which the dealer loans the plate to the purchaser or the first full calendar day thereafter.

Following a fatal motor vehicle accident, the plaintiffs in this joint appeal, Casey Leigh Rutter, Nancy Beale, as administratrix of the estate of Lindsey Beale, and Jason Ferreira, each commenced an action against the defendant Danbury Fair Hyundai, LLC,[2] a motor vehicle dealer whose dealer license plate was displayed on one of the vehicles involved in the accident. The trial court concluded that the accident occurred on the last day of the thirty day limitation period of § 14-60 (a) because the day during which the defendant loaned the plate was not included in the calculation of the thirty day period. The Appellate Court agreed and affirmed the judgments of the trial court; see *Rutter* v. *Janis*, 180 Conn. App. 1, 5, 182 A.3d 85 (2018); and we granted certification, limited to the issue of whether the Appellate Court correctly excluded the date of the loan when calculating the thirty day loan period. See *Rutter* v. *Janis*, 329 Conn. 904, 185 A.3d 594 (2018).

We agree with the Appellate Court that the day of the loan does not count toward the thirty day limitation period of § 14-60 (a). In particular, we conclude that the legislature's unqualified use of the term "days"—a term that has a well established legal meaning in our jurisprudence—indicates that it intended the thirty day period to be measured in terms of full calendar days. Therefore, because the day of the loan was a "fraction" of a day rather than a full calendar day, it must be excluded. This construction is consistent with this court's long recognized policy that, when calculating statutory and other deadlines, "the day of the act from which a future time is to be ascertained . . . is to be excluded from the calculation . . . ." *Weeks* v. *Hull*, 19 Conn. 376, 382 (1849). This court established, and has consistently adhered to, this rule as a matter of policy in order to ensure uniformity and predictability in the computation of deadlines, and we see no reason why it should not be applied to § 14-60 (a). Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following undisputed facts. "On May 9, 2013, Luis Martins and his father, Jorge Martins, purchased a 2013 Hyundai Veloster automobile from the defendant. Because the defendant had not received the automobile manufactur-

er's certificate of origin, the parties could not complete the transfer of Luis Martins' motor vehicle registration from his previous vehicle . . . to the new vehicle. The defendant loaned a dealer number plate to Luis Martins while the registration process was pending. The defendant and Luis Martins signed [a "Temporary Loan of Motor Vehicle" agreement (loan agreement)] at approximately 7 p.m. on May 9, 2013.[3]

"On June 8, 2013, at approximately 3 p.m., Luis Martins, while driving the Hyundai Veloster automobile, was involved in a motor vehicle accident in Danbury. As a result of the accident, his passengers, Lindsey Beale, Casey Leigh Rutter and Jason Ferreira, sustained traumatic injuries; Beale died from her injuries. At the time of the accident, the Hyundai Veloster automobile displayed the dealer number plate belonging to the defendant." (Footnote added.) *Rutter* v. *Janis*, supra, 180 Conn. App. 5.

In separately filed complaints, the plaintiffs asserted a number of claims in support of their theory that the defendant was liable for the damages resulting from the June 8, 2013 accident, and Rutter included a claim that the defendant had loaned the dealer plate to Luis Martins in violation of § 14-60. Thereafter, the defendant filed a substantially similar motion for summary judgment in each case, asserting that it was not liable because its loan of the dealer plate met the requirements of § 14-60, and that the accident occurred "twenty-nine days and [twenty] hours after the plates were loaned out, and thus well within the thirty day period of time required by [§ 14-60 (a)]." Each plaintiff filed a substantially similar opposition, asserting, inter alia, that there were genuine issues of material fact as to whether the defendant complied with the requirements of § 14-60 (a), and also that the loan agreement exceeded the thirty day time limit because it permitted Luis Martins to return the plate as late as June 9, 2013, which was, "at a minimum, thirty-one days" after the defendant loaned the plate.[4]

The trial court granted each of the defendant's motions and rendered judgment in each case for the defendant, concluding that the defendant complied with § 14-60. In reaching its conclusion, the trial court reasoned that the date on which the defendant loaned the plate to Luis Martins—May 9, 2013—did not count toward the thirty day limit. Therefore, using May 10 as "day one," and measuring the thirty days against the date of the accident,[5] the court concluded that the accident on June 8, 2013, occurred on the thirtieth day after the defendant loaned the plate, within the thirty day time limit of § 14-60 (a). Rejecting the plaintiffs' other arguments in opposition to summary judgment, the court ruled that the defendant "complied with [§] 14-60 . . . and is protected from liability for the accident."

The plaintiffs appealed from the judgments of the

trial court to the Appellate Court, which affirmed those judgments, concluding, inter alia, that the court properly excluded the day on which the loan was made when computing the thirty day time limit under § 14-60 (a).[6] See *Rutter* v. *Janis*, supra, 180 Conn. App. 14. Counting May 10, 2013—the day after the loan agreement was executed—as the first day, the Appellate Court concluded that "[t]he accident on June 8, 2013, occurred not more than thirty days following the loan agreement and, therefore, was within the statutory time limit set forth in § 14-60 (a)."[7] Id.

On appeal to this court, the plaintiffs claim that the Appellate Court incorrectly excluded the date of the loan from the computation of the thirty day period under § 14-60 (a) because (1) the text of § 14-60 (a) indicates that the legislature intended it to be included, and (2) the parties to the loan agreement—that is, Luis Martins and the defendant—intended for the loan period to begin running on the date the loan agreement was executed, May 9, 2013. We find neither argument persuasive.

We begin with our standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 820–21, 116 A.3d 1195 (2015).

I

The plaintiffs first claim that the Appellate Court incorrectly failed to count the date on which the defendant loaned the plate to Luis Martins as the first day of the thirty day limitation period because the plain terms of § 14-60 (a) require that date to be included. We disagree.

Because resolution the plaintiffs' claim requires us to construe § 14-60 (a), we begin with the general principles of statutory construction that guide our analysis. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019). "Issues of statutory construction . . . are also matters of law subject to our plenary review." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010).

"In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). Of particular relevance in the present case is the principle that "words having a determined meaning at common law generally are given that same meaning in a statute." *State* v. *Dupigney*, 295 Conn. 50, 59, 988 A.2d 851 (2010).

"[L]egal terms . . . absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . *In ascertaining legislative intent [r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense*." (Emphasis added; internal quotation marks omitted.) Id.; see also *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 301 n.6, 622 A.2d 1005 (1993) ("[w]here a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries" (internal quotation marks omitted)).

We next turn to the text of the statute, which provides in relevant part: "No dealer . . . may loan a . . . number plate . . . to any person except . . . when such person has purchased a motor vehicle from such dealer, the registration of which is pending, and in any case *for not more than thirty days in any year* . . . ." (Emphasis added.) General Statutes § 14-60 (a) (3). The statute does not define the term "days" or specify how the thirty day period is to be computed. Nevertheless, our case law, dating back 200 years, demonstrates that the word "day" has acquired a common legal usage that illuminates our construction of § 14-60 (a). This case

law highlights two related concepts that lead us to conclude that the legislature intended the date on which the dealer loans the plate to the customer not to be counted toward the thirty day limit.

First, this court has long recognized that, when left unqualified in a statute, the word "day" refers to a calendar day, that is, a twenty-four hour period that runs from midnight to midnight. See *Secretary of Office of Policy & Management* v. *Employees' Review Board*, 267 Conn. 255, 265–66, 837 A.2d 770 (2004) ("[C]ourts generally have construed the word day, when left unqualified, to mean a calendar day. . . . [A] calendar day is the space of time that elapses between two successive midnights. . . . Therefore, the fact that the legislature did not qualify the term day . . . suggests that a day [for purposes of an employment benefits statute] represents an entire twenty-four hour period . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.)); *Miner* v. *Goodyear Glove Mfg. Co.*, 62 Conn. 410, 411, 26 A. 643 (1892) ("The current of authorities is substantially unvarying to the effect that when the word 'day' is used in a statute . . . it will, unless it is in some way restricted, be held to mean the whole twenty-four hours. Thus, when the statute . . . fixes [a] period of . . . days, it must be taken to mean days in the sense of the law."); *Fox* v. *Abel*, 2 Conn. 541, 542 (1818) ("It is a [well-known] rule of the common law, that a day comprises twenty-four hours, extending from midnight to midnight . . . . When a day is spoken of in law, it comprehends that period of time."); see also *The Pocket Veto Case*, 279 U.S. 655, 679, 49 S. Ct. 463, 73 L. Ed. 894 (1929) ("[t]he word 'days,' when not qualified, means in ordinary and common usage calendar days").[8] Accordingly, the legislature's provision of a certain number of "days" in a statute suggests, in the absence of textual evidence to the contrary, that it intended to measure time in terms of full calendar days, each consisting of a twenty-four hour period that runs from midnight to midnight.

Second, and relatedly, the law does not recognize "fractions" of a day; rather, a day is considered an indivisible unit of time. As this court explained when construing the word "days" as used in a statute requiring encumbrances to be perfected "within sixty days next preceeding" the commencement of insolvency proceedings, "[i]n the sense of the law a day includes in it the whole twenty-four hours, the law generally rejecting all fractions of a day, in order to avoid disputes. . . . The effect is to render the day a sort of indivisible point, so that any act done in the compass of it is no more referable to one than to any other portion of it; but the act and the day are [coextensive], and therefore the act cannot be said to be passed till the day is passed." (Citations omitted; internal quotation marks omitted.) *Miner* v. *Goodyear Glove Mfg. Co.*, supra, 62 Conn. 411.

In other words, because "the day and the act [are] coterminous and of equal length, nothing could precede the act that did not also precede the day. . . . The act and the day would begin and end together. Nothing could be after the act that was not also after the day." Id., 411–12; see also *Sands* v. *Lyon*, 18 Conn. 18, 26 (1846) (noting "well established maxim of law . . . that there is no fraction of a day; it being considered an indivisible point of time"); *Brown* v. *Hartford Ins. Co.*, 3 Day (Conn.) 58, 67 (1808) ("[i]t is true, generally, that the law disregards the fractions of a day").

Because we assume that the legislature intended the word "days" to be interpreted consistently with this established legal meaning, the legislature's use of the phrase "not more than thirty days" in § 14-60 (a) suggests that it intended to provide motor vehicle dealers with thirty full, twenty-four hour calendar days within which to loan their plates to customers. As we construe the statute to provide for thirty full and *indivisible* calendar days, the date on which the dealer loans the plate to the customer must be excluded. This is because, on the date of the loan, the dealer does not loan the plate for a full calendar day. Rather, because the loan necessarily is made after 12 a.m.—in the present case, 7 p.m.—the plate is loaned for less than twenty-four hours on that date. Thus, the date of the loan is merely a fraction of a day and does not count as a "day," i.e., a full twenty-four hour period for purposes of computing the thirty day limit of § 14-60 (a).

If the date of the loan were counted, motor vehicle dealers would not receive the thirty full calendar days contemplated by the statute; they would receive only twenty-nine full calendar days. To be sure, because the law rejects fractions of a day, excluding the date of the loan does not provide dealers with more than the thirty calendar days provided by § 14-60 (a). Indeed, even though excluding the date of the loan results in dealers being allowed to loan the plates for several hours beyond thirty days, i.e., whatever time was remaining on the day of the loan, such a fraction of a day is not a "day" as that term is understood in the law. Consequently, despite the extra hours, dealers are not thereby afforded an extra day.

On the basis of the foregoing, we conclude that the legislature's unqualified use of the phrase "thirty days" indicates that the legislature intended to count only full calendar days, which requires the date of the loan to be excluded. Had the legislature intended for a more limited construction of the word "days" for purposes of computing the thirty day period, or for the statutory time clock to begin on the date of the loan, it would have said so explicitly. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation

omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012); see also *King* v. *Volvo Excavators AB*, 333 Conn. 283, 296, 215 A.3d 149 (2019) ("[o]ur case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent" (internal quotation marks omitted)). Indeed, the legislature has provided for "portions" or "fractions" of days in numerous other statutes, indicating that it knows how to require fractions of days to be counted when it intends to do so.[9] Because § 14-60 (a) contains no such language, "[w]e will not impute to the legislature an intent to limit [a] term where such intent does not otherwise appear in the language of the statute." (Internal quotation marks omitted.) *Secretary of Office of Policy & Management* v. *Employees' Review Board*, supra, 267 Conn. 274.

Moreover, our interpretation of the text of § 14-60 (a), requiring the date of the loan to be excluded, is consistent with the well established principle that, in the absence of statutory language requiring otherwise, "the day of the date, or the day of the act from which a future time is to be ascertained, is to be excluded from the calculation . . . ." *Weeks* v. *Hull*, supra, 19 Conn. 381. This court recognized this rule in *Weeks* in 1849 in response to the "considerable uncertainty and confusion as to the manner of computing time" that had arisen as a result of prior decisions applying different computation methods to statutes and contracts. Id., 380. Such lack of uniformity, this court explained, was "of no practical use, but [was] well calculated to mislead." Id.; see also id., 381 (noting that "diversity of computation was both unnecessary and perplexing"). As a result, this court settled what it called "the true rule," namely, that the date of the act does not count. Id. This rule was to be applicable to contracts, wills, and "all other instruments," as well as to the "construction of statutes," for the purpose of establishing uniformity and predictability in the calculation of deadlines.[10] Id.; see also *Blackman* v. *Nearing*, 43 Conn. 56, 60 (1875) ("Instead of making distinctions in cases so nearly identical, the effect of which must be to perplex and mislead, we think it far preferable to have one uniform rule, and make that applicable, generally, to all contracts and obligations of every description, wills, and other legal instruments, statutes, and all proceedings under them. The day of the date, and the day of the act from which a future time is to be ascertained, should be excluded.").

*Weeks* thus established a rule of general applicability that this court uniformly has adhered to when calculating statutory and other deadlines. See, e.g., *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 264, 811 A.2d 693 (2003); *DeTeves* v. *DeTeves*, 202 Conn. 292, 297 n.7, 520 A.2d 608 (1987); *Lamberti* v. *Stamford*, 131 Conn. 396, 397–98, 40 A.2d 190 (1944); *Austin, Nichols &*

*Co.* v. *Gilman*, 100 Conn. 81, 84, 123 A. 32 (1923); *Miner* v. *Goodyear Glove Mfg. Co.*, supra, 62 Conn. 411–12; *Blackman* v. *Nearing*, supra, 43 Conn. 60. But cf. *Krajniak* v. *Wilson*, 157 Conn. 126, 129–30, 249 A. 2d 249 (1968) (holding that *Weeks* rule did not apply to employment statute because statutory regulation requiring probationary work period to begin "on the date of . . . appointment" "render[ed] inapplicable our usual rule" that date of precipitating act is not counted). In applying the rule established in *Weeks* to a statute requiring that notice of an intent to sell commodities must be recorded "not less than fourteen nor more than thirty days prior to [the] sale"; General Statutes (1918 Rev.) § 4749; this court explained in *Austin, Nichols & Co.* that, "[u]nless settled practice or established custom, or the intention of the parties, or the terms of a statute, have included in the computation the date or act of accrual, it is to be excluded from the computation. This is not only our established rule, but the rule established by modern authority, applicable to all kinds of instruments, to statutes, and to rules and orders of court."[11] *Austin, Nichols & Co.* v. *Gilman*, supra, 84.

We see no reason to depart from the *Weeks* rule in the present case. As we have explained, the language of § 14-60 (a)—specifically, the unqualified use of the term "days"—suggests that the legislature intended to provide dealers with thirty full calendar days within which to loan their plates and, therefore, to exclude the date on which the loan was made. If this court were to dispense with the *Weeks* rule under these circumstances, it would undermine the uniformity and predictability that the rule was meant to establish.[12] See *Weeks* v. *Hull*, supra, 19 Conn. 381; see also *Blackman* v. *Nearing*, supra, 43 Conn. 60.

We do not find the plaintiffs' arguments against excluding the date of the loan persuasive. First, the plaintiffs argue that, although the law regards a "day" as indivisible and does not recognize fractions of a day, this principle does not require the time remaining on the date of the loan to be disregarded but, rather, to be counted as a full calendar day. The plaintiffs cite no authority to support this proposition. To the contrary, "it is well settled that in computing the time prescribed by law within which to perform an act, only whole days, not fractions thereof, are considered." *Postlethwaite & Netterville, APAC* v. *Royal Indemnity Co.*, 857 So. 2d 590, 596 (La. App. 2003), writ denied, 870 So. 2d 299 (La. 2004), and writ denied, 870 So. 2d 299 (La. 2004); see also *Miner* v. *Goodyear Glove Mfg. Co.*, supra, 62 Conn. 411 (holding that, because days are indivisible units of time, date of precipitating act did not count toward sixty day statutory time limit); *Sands* v. *Lyon*, supra, 18 Conn. 27–28 (excluding date of testator's death when calculating deadline set forth in his will because counting "remaining portion" of that day as one full day would violate established principle that

there are no fractions of days); *Pederson* v. *Moser*, 99 Wn. 2d 456, 463, 662 P.2d 866 (1983) ("[w]e hold that fractions of days were properly ignored in the present case" for purposes of calculating statutory deadline).

Second, the plaintiffs contend that excluding the day of the loan for purposes of calculating the thirty day period would create an inconsistency with another clause in § 14-60 (a) that requires dealers to retain records of the plates and vehicles that they loan "for a period of six months from the date on which the number plate or motor vehicle or both were loaned . . . ." The plaintiffs assert that this language indicates that the legislature intended for the day of the loan to be counted in the computation of this six month period, and that the thirty day clause should be similarly construed.

Even if this language suggests that the legislature intended that the first day of this six month period is the day on which the loan was made—a proposition that is itself unclear—it would cut against rather than in favor of the plaintiffs' position because it would suggest that the legislature's omission of similar language in reference to the computation of the thirty day period was intentional. "As we often have stated, when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 487 (2009). Accordingly, we will not "supply" to the thirty day clause of § 14-60 (a) "statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010).[13]

## II

The plaintiffs also contend that the trial court improperly granted the defendant's motions for summary judgment because there was a genuine issue of material fact as to whether the parties intended the day of the loan to be counted in the thirty day calculation. The plaintiffs rely on the terms of the loan agreement, as well as excerpts from the deposition transcript of William Sabatini, the defendant's chief financial officer, in which Sabatini testified that the first day of the loan period was May 9, 2013, and that the loan was for "more than thirty days." We are not persuaded.

The evidence submitted by the plaintiffs relates only to the parties' intent for *the loan agreement* to begin on May 9, 2013. The dispositive question in the present case, however, is whether the *thirty day period under § 14-60 (a)* began to run on that date. The plaintiffs have not adduced any evidence that the parties intended for this statutory period to begin running on May 9, 2013.

Moreover, as a matter of law, the intent of the parties does not bear on the question of whether the date of the loan counts as one of the thirty days under § 14-60 (a), which is a question of statutory construction that turns entirely on the intent of the legislature. See *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 46. Although, as the plaintiffs note, this court observed in *Austin, Nichols & Co.* v. *Gilman*, supra, 100 Conn. 84, that the date or act of accrual is excluded "[u]nless settled practice or established custom, or the intention of the parties" indicate otherwise, this allusion to the parties' intent, viewed in context, was merely a reference to the *Weeks* rule as it applies to contracts, wills, and other instruments. See id. (noting that rule is "applicable to all kinds of instruments, to statutes, and to rules and orders of court"); *Blackman* v. *Nearing*, supra, 43 Conn. 60 (*Weeks* rule is "applicable, generally, to all contracts and obligations of every description, wills, and other legal instruments"). With respect to these types of instruments, the intent of the parties may dictate whether the date of the occurrence of the relevant act counts toward the time limitation so as to overcome an application of the *Weeks* rule. See, e.g., *Sands* v. *Lyon*, supra, 18 Conn. 28.

Statutes are different with respect to matters of intent. Indeed, a closer examination of the quote from *Austin, Nichols & Co.* demonstrates that only the language of the statute can dictate whether the legislature intended for a rule other than the general rule of excluding the date of the act to apply: "Unless settled practice or established custom, or the intention of the parties, *or the terms of a statute, have included in the computation the date or act of accrual,* it is to be excluded from the computation." (Emphasis added.) *Austin, Nichols & Co.* v. *Gilman*, supra, 100 Conn. 84. Statutes must be interpreted according to their plain terms, and that interpretation cannot be altered by the intent of the parties in a given case. See General Statutes § 1-2z ("[t]he meaning of a statute shall . . . be ascertained from the text of the statute itself"). Thus, although the text of the statute or an applicable regulation may render the *Weeks* rule inapplicable; see *Krajniak* v. *Wilson*, supra, 157 Conn. 130; the intent of the parties cannot.

Accordingly, we agree with the Appellate Court that the day on which the defendant loaned the dealer plate to Luis Martins—May 9, 2013—did not count toward the computation of the thirty day period. Using May 10, 2013, as the first day, it is undisputed that the accident on June 8, 2013, occurred on the thirtieth full calendar day after the parties executed the loan agreement and, therefore, within the thirty day limitation period of § 14-60 (a).[14]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this

court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins and Vertefeuille. Although Chief Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and has listened to a recording of oral argument prior to participating in this decision.

[1] General Statutes § 14-60 (a) provides in relevant part: "No dealer or repairer may loan a motor vehicle or number plate or both to any person except for (1) the purpose of demonstration of a motor vehicle owned by such dealer, (2) when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs by such dealer or repairer, or (3) when such person has purchased a motor vehicle from such dealer, the registration of which is pending, *and in any case for not more than thirty days in any year*, provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle, motor vehicle on which the loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. If the person to whom the dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of the loaned motor vehicle or a motor vehicle on which the loaned number plate is displayed. . . ." (Emphasis added.)

We note that § 14-60 (a) was amended by the legislature subsequent to the date of the events underlying the present case. See Public Acts 2013, No. 13-271, § 22. That amendment, however, has no bearing on the merits of this appeal. For the sake of simplicity, we refer to the current revision of the statute.

[2] Each plaintiff also named as defendants Luis Martins, Jorge Martins, Adam Janis, and Eagle Electric Service, LLC, and, in addition, Rutter named State Farm Automobile Insurance Company as a defendant. The claims against those defendants were not a subject of the motion for summary judgment in the consolidated appeals to the Appellate Court, and are not at issue in this certified appeal. Accordingly, we refer to Danbury Fair Hyundai, LLC, as the defendant and to the other defendants by name.

[3] "Although Jorge Martins, who is described in the court's memorandum of decision as Luis Martins' father, did not sign the loan agreement, it is undisputed that he was a co-owner of the 2013 Hyundai Veloster automobile that was the subject of that agreement." *Rutter* v. *Janis*, supra, 180 Conn. App. 4 n.3.

[4] The plaintiffs also asserted that the defendant had failed to plead § 14-60 (a) as a special defense and that the defendant was ineligible to claim the protections of § 14-60 (a) because Luis Martins' registration was not "pending" at the time the defendant loaned the dealer plate to him. See General Statutes § 14-60 (a) (3).

[5] In a footnote, the court rejected the plaintiffs' argument that the relevant cutoff date for purposes of calculating the thirty days was the return date specified in the loan agreement, as opposed to the date of the accident, stating that "[t]his argument is contrary to the intent of [§ 14-60]" and that, "although [the loan agreement] refers to a June 9, 2013 date, that is not the return date consistent with the claim by the defendant . . . ." The court provided no further explanation.

[6] The Appellate Court also rejected the plaintiffs' other claims on appeal that the defendant was not entitled to summary judgment under § 14-60 (a), including that the defendant failed to establish that it loaned the plate to Luis Martins while his registration was pending. See *Rutter* v. *Janis*, supra, 180 Conn. App. 14–18.

[7] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude, under the circumstances of this case, that the thirty day loan period of . . . § 14-60 did not, as a matter of law, include the first day of the loan period?" *Rutter* v. *Janis*, supra, 329 Conn. 904.

[8] The common usage of an undefined term may also be established by reference to its dictionary definition. See *Police Dept.* v. *State Board of Labor Relations*, supra, 225 Conn. 301 n.6. "A 'day' is defined [in the dictionary] as: 'the time of light or interval between one night and the next [or] . . . the period of the earth's rotation on its axis ordinarily divided into [twenty-four] hours . . . .' " *Secretary of Office of Policy & Management* v. *Employees' Review Board*, supra, 267 Conn. 265. This definition is "[c]onsistent with" the common usage of the word "day" as established by case law. See id.

[9] See, e.g., General Statutes § 10-151 (a) (6) (A) (iii) ("only the student school days worked that year by such teacher shall count towards tenure and shall be computed on the basis of eighteen student school days *or the greater fraction thereof* equaling one school month" (emphasis added)); General Statutes § 12-666 (a) ("[t]he surcharge . . . shall be at a rate of one dollar for each day, *or portion thereof*, up to thirty days" (emphasis added)); General Statutes § 16-244z (a) (1) (B) ("the authority shall establish the period of time that will be used for calculating the net amount of energy produced by a facility . . . and such period of time shall be either (i) in real time, (ii) in one day, *(iii) in any fraction of a day not to exceed one day*" (emphasis added)); General Statutes § 19a-403 (a) (providing that members of Office of Chief Medical Examiner shall be paid witness fee of $500 "for each day or portion thereof" that they are required to attend court); General Statutes § 31-222 (a) (1) (D) (ii) (defining "[e]mployment" to mean service performed for organization with "one or more employees in employment for *some portion of a day* in each of thirteen different weeks" (emphasis added)); General Statutes § 31-223 (a) (3) (B) (providing that employers shall become subject to unemployment statutes if, after date certain, they employed at least one individual "for some portion of a day in each of twenty different calendar weeks"); General Statutes § 42a-4-104 (a) (3) (" 'banking day' means the *part of a day* on which a bank is open to the public" (emphasis added)).

[10] In recognizing this rule in *Weeks*, this court expressly disavowed "earlier cases, elsewhere, [that] suggest[ed] a different rule"; *Weeks* v. *Hull*, supra, 19 Conn. 382; including *Arnold* v. *United States*, 13 U.S. (9 Cranch) 104, 119, 3 L. Ed. 671 (1815), in which the United States Supreme Court suggested that, "[w]here the computation is to be made from an act done, the day, on which the act is done, is to be included."

[11] The *Weeks* rule also is consistent with the approach taken in federal courts. See Fed. R. Civ. P. 6 (a) (1) (A) (providing that, "in any statute that does not specify a method of computing time . . . [w]hen the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period").

[12] We note that our conclusion that only full calendar days count toward the thirty day time limit of § 14-60 (a) may produce scenarios not contemplated or intended by the legislature. For instance, if a dealer loaned a motor vehicle to a customer in the morning on a particular day while the dealer repairs that customer's vehicle, and the customer returned the vehicle the following day in the afternoon, the dealer would not be regarded as having loaned the vehicle for a "day" as we have construed that term in the present case, despite the fact that more than twenty-four hours have passed. Although this result is somewhat counterintuitive, we do not believe that it justifies departing from the plain language of the statute or the *Weeks* rule. We leave to the legislature the question of whether to address this scenario by amending § 14-60 (a) to provide for the counting of a fraction of a day.

[13] The plaintiffs also cite to a number of statutes that use the phrase "days in any year" or similar language and argue that, because the legislature clearly intended to include the day of the act for purposes of these statutes, it must have had a similar intent with respect to § 14-60 (a). See General Statutes § 12-408 (1) (E) (ii); General Statutes § 12-411 (1) (D) (ii) (I); General Statutes § 14-15a (a); General Statutes § 14-59; General Statutes § 45a-42. The plaintiffs cite no case law interpreting any of these statutes, and it is hardly obvious, as the plaintiffs suggest, that any of them would include the day of the act in their time computations, particularly when doing so would require counting fractions of days as whole days. We therefore disagree that these statutes, on their face, provide any persuasive justification for departing from the otherwise plain text of § 14-60 (a) or the *Weeks* rule.

[14] Because we conclude that the accident occurred within the thirty day time limit of § 14-60 (a), we need not address whether the loan agreement violated the thirty day limit by specifying a return date of June 9, 2013. See *Rutter* v. *Janis*, supra, 180 Conn. App. 14. As the plaintiffs acknowledged in their brief, "[i]f the loaned car or plate is involved in a collision during the thirty day period, then the dealer will not be liable, as long as the conditions of the statute are met. However, if a crash occurs after the thirty day period, then the dealer can be liable . . . ."